UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 17-CR-_____ |
| | : | |
| v. | : | Violations:  18 U.S.C. §§ 371; 666; 1341; |
| | : | 1343; 1346; 1951; 1956; 1957; 1962(c); and |
| BRIAN AUGUSTINE JOYCE | : | 2; 18 U.S.C. §§ 981(a)(1)(C); 982(a)(1); |
| | : | 1963 and 28 U.S.C. § 2461(c) |
| | : | |

## INDICTMENT

THE GRAND JURY charges:

## COUNT ONE
(Racketeering - 18 U.S.C. § 1962(c))

At all times relevant to this Indictment,

### The Enterprise

1.      The Massachusetts State Senate consists of 40 members, with each Senator elected to represent a district consisting of approximately 100,000 to 200,000 people.    The Massachusetts Constitution requires the Senate to meet on a regular basis to consider legislation.

2.      The Norfolk, Bristol, and Plymouth Senate district of Massachusetts consists of ten towns: the towns of Avon, Braintree (four precincts), Canton, Milton, Randolph, Sharon (two precincts), and Stoughton, in the county of Norfolk; the town of Easton (four precincts) in the county of Bristol; and the towns of East Bridgewater (one precinct) and West Bridgewater in the county of Plymouth.

3.      From approximately 1998 to 2017, Brian Augustine Joyce, a Milton resident, was the elected State Senator for the Norfolk, Bristol, and Plymouth district (the "District").    As State Senator, Joyce represented the interests of the District, as well as the Commonwealth, on a regular

1

and continuing basis each year, with respect to state legislation, state and local budget matters, and certain local legislation, among other things.

4.　　In addition to being State Senator, defendant Joyce was a licensed Massachusetts attorney, who maintained a law office in Canton, known as the Joyce Law Group (the "Joyce Law Office").　In or about January 2006, defendant Joyce incorporated Brian A. Joyce, Attorney at Law, P.C. ("BAJPC") in Massachusetts.　Defendant Joyce was the sole shareholder, director, and officer of BAJPC.　Within the Joyce Law Office umbrella, BAJPC was a named partner in partnerships with other law partners, including a partner who specialized in insurance defense litigation ("Partner 1," with whom defendant Joyce formed "Partnership 1").

5.　　Senator Joyce maintained offices at the Massachusetts State House in Boston and at a District office in Canton ("District Office"), which was co-located at Joyce's private law office in Canton, upon which an outdoor sign was affixed: "SENATOR BRIAN A. JOYCE [-] ATTORNEY AT LAW."　Senator Joyce performed his official duties with the assistance of his Senate staff, which was comprised of a chief of staff, legislative aides, a communications director, and other staff members and assistants (collectively, with Senator Joyce, the "Senate Office of Brian A. Joyce" or the "Senate Office").

6.　　The Senate Office of Brian A. Joyce constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate commerce.　The Senate Office enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2

7.     The Senate Office's objectives included, but were not limited to, drafting, researching, advocating, proposing, and filing legislation; making recommendations and voting upon state budgets, state funding, and other legislative matters; participating in Senate and joint legislative committees; consulting with and making recommendations to other Massachusetts state officials, agencies, and departments; meeting and consulting with city and town representatives and officials; and performing constituent services.

**The Defendant and related individuals and entities**

8.     Defendant Brian Augustine Joyce, as State Senator, owed a duty of honest services to the District and the Commonwealth of Massachusetts that included the duty to refrain from accepting, or agreeing to accept, bribes and kickbacks offered in exchange for his official action, which included using his official position to exert pressure on another official to perform an official act, and using his official position to advise another official, intending that such advice would form the basis for an official act by another official.

9.     As State Senator, defendant Joyce was required, pursuant to M.G.L. Ch. 268B §5, to file a statement of financial interest ("SFI") each year with the Massachusetts State Ethics Commission (the "Ethics Commission") and to publicly disclose, among other things:

    A.  Each business with which defendant Joyce, or his immediate family members, was associated as an employee, partner, sole proprietor, officer, director or in any similar managerial capacity, whether compensated or uncompensated, full- or part-time.

    B.  The name and address of, the nature of association with, the share of equity in, if applicable, and the amount of income if greater than one thousand dollars derived from each business with which he, or his immediate family members, was associated.

    C.  Any business in which defendant Joyce, and/or his immediate family members, owned more than 1% of the equity at any time (which would include any

business in which defendant Joyce held a more than 1% equity interest through the ownership of another business, *e.g.*, if defendant Joyce owned 20% of equity in Business A, and Business A owned 60% of Business B, defendant Joyce would be considered to own 12% of equity in Business B).

D. Any security or investment with a fair market value above $1,000 that was beneficially owned by defendant Joyce or his immediate family members (not including retirement plans, 401(k) plans, etc.).

E. Any source that gave gifts whose aggregate fair market value exceeded $100 for the calendar year if the source of such gift was a person that had direct interest in legislation, legislative action, or a matter before any governmental body.

10.     Further, as State Senator, defendant Joyce was prohibited, pursuant to M.G.L. Ch. 268A §23(b), from (a) soliciting or receiving anything of substantial value for or because of his official position; (b) using or attempting to use his official position to secure unwarranted privileges of substantial value which were not available to similarly situated individuals; and (c) acting in a manner which would cause a reasonable person to conclude that another person could improperly influence or unduly enjoy his favor in the performance of his official duties.

**Objective of the Defendant**

11.     Defendant Joyce's objective in conducting and participating in the affairs of the Senate Office enterprise was to secretly profit from his position as State Senator by (a) carrying out a scheme and artifice to defraud the District and the Commonwealth of Massachusetts of his honest services by conspiring to accept and accepting a stream of concealed bribes and kickbacks from private individuals and entities in exchange for his official action as specific opportunities arose, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official; (b) conspiring to obtain, attempting

4

to obtain, and obtaining property from private individuals and entities under color of official right; and (c) employing various methods of concealment, including using a shell company and other entities to launder proceeds from his bribery and kickback schemes.

### Method and Means of the Defendant

12.     Defendant Brian Augustine Joyce conducted and participated in the conduct of the affairs of the enterprise by cultivating power and influence within the Massachusetts legislature through, among other things, his membership on various legislative committees, including the Special Senate Committee on Government Expenditures and the Joint Committee on Telecommunications, Utilities and Energy; and his assumption of leadership roles, such as Senate Assistant Majority Leader during the 2015-2016 legislative session and Chair of the Senate Bonding Committee.   Defendant Joyce also cultivated and maintained power and influence within his District as the District's long-time incumbent State Senator for legislative and other governmental matters, including state and local budget matters, state legislative action, and local legislation that required state approval, among other things.

13.     Defendant Joyce used the power and influence of the Senate Office enterprise to extract payments from various individuals and entities in exchange for his official action as State Senator, including using defendant Joyce's official position as State Senator to exert pressure on and to advise other officials within his District and elsewhere to perform an official act, intending that such advice would form the basis for an official act by other officials.

14.     Defendant Joyce concealed these payments by using various methods, including, among other things: (a) using the Joyce Law Office as a money laundering conduit for the corrupt payments; (b) falsely characterizing the bribe and kickback payments as legal referral fees, real

estate consulting fees, and other legal fees; (c) making material, false statements and omissions to

the Ethics Commission and thereby using the Ethics Commission as a cloak of legitimacy for his

corrupt schemes; and (d) laundering additional bribery proceeds by masking corrupt payments as

the purchase of a 2014 Jeep.

**The Energy Broker Kickback Scheme**

15.     The "Energy Broker Company" was an energy brokerage and consulting company

that was based in New York and that did business in and affecting interstate commerce.    The

Energy Broker Company advised public and private entities in selecting energy providers in

exchange for an energy broker commission.    An individual, the "Energy Broker Executive,"

managed and directed the Energy Broker Company business in Massachusetts.

16.     From in or about early 2011 through 2015, defendant Joyce and the Energy Broker

Executive agreed that defendant Joyce would use his official position as State Senator to exert

pressure on and advise officials within the District and elsewhere to take official action in favor of

the Energy Broker Company, as specific opportunities arose.    Prior to 2011, defendant Joyce had

no background or experience in energy brokerage sales.    In exchange for defendant Joyce's

official action, the Energy Broker Executive agreed that the Energy Broker Company would

secretly pay kickbacks to defendant Joyce in the form of broker commissions, which were

calculated as a percentage of, and included in, the public or private entity's monthly energy

payment.

17.     Windswept, LLC ("Windswept") was a shell company that defendant Joyce created

in or about April 2011 for the purpose of collecting concealed kickbacks from the Energy Broker

Company that were paid in exchange for defendant Joyce's use of his official position as State

Senator to exert pressure on and advise officials within the District and elsewhere in Massachusetts to take official action in favor of the Energy Broker Company, as specific opportunities arose. According to state filings, defendant Joyce formed Windswept in Massachusetts, listed himself as Windswept's manager, and reported the business of Windswept as "brokerage services and such other activities permitted by law."

18. From in or about April 2011 to January 2016, defendant Joyce took several steps to conceal his involvement with the Energy Broker Company, which included, but were not limited to, the following:

A. Defendant Joyce formed Windswept for the purpose of entering into a broker commission agreement with the Energy Broker Company.

B. Defendant Joyce allocated a 50% ownership share of Windswept to BAJPC and a 50% ownership share of Windswept to a personal friend and associate of defendant Joyce (the "Associate").

C. Defendant Joyce had the Associate sign the broker commission agreement with the Energy Broker Company on Windswept's behalf. The broker commission agreement contained no reference to defendant Joyce.

D. Defendant Joyce opened a Massachusetts bank account for Windswept for the purpose of collecting and distributing his secret kickbacks from the Energy Broker Company between himself and the Associate. Defendant Joyce designated himself as the sole signatory on the account and reported Windswept's business as "Energy Brokerage."

E. Defendant Joyce funneled the secret kickbacks from Windswept to BAJPC in order to create the appearance that the Energy Broker Company was paying "legal" fees to defendant Joyce, which defendant Joyce then misleadingly reported as law-related income on his yearly SFI to the Ethics Commission.

19. In or about early 2013, defendant Joyce parted ways with the Associate. In mid-2013, defendant Joyce and the Energy Broker Executive negotiated and entered into a new broker commission agreement, pursuant to which defendant Joyce, solely, would continue to secretly

collect kickbacks that were paid in the form of energy broker commissions.  In order to continue to disguise and conceal his relationship with the Energy Broker Company, defendant Joyce caused the following modifications to the new sales representation agreement:

  A. Defendant Joyce required the Energy Broker Company to agree "not to knowingly disclose the existence to this agreement."

  B. Defendant Joyce deleted the term "commissions" throughout the agreement and replaced that term with the term "referral fees," even though defendant Joyce acted as an energy sales broker for the Energy Broker Company, and not as a lawyer.

  C. Defendant Joyce entered into the broker commission agreement through his company, BAJPC, as a party to the agreement and not himself, personally.

  D. By designating BAJPC as a party to the agreement, defendant Joyce funneled all of the energy broker commissions from the Energy Broker Company to himself through the Joyce Law Office, with the purpose of disguising his energy broker commission income as law firm-related income on his yearly SFI to the Ethics Commission.

20.  From 2011 to 2015, defendant Joyce made material false statements and omissions to the Ethics Commission to conceal his corrupt relationship with the Energy Broker Company, including, but not limited to, the following:

  A. Defendant Joyce submitted yearly SFI's that omitted his ownership of Windswept despite the fact defendant Joyce owned 100% of BAJPC and BAJPC owned 50% of Windswept.

  B. Defendant Joyce submitted yearly SFI's that omitted his relationship with the Energy Broker Company despite the fact that he received over $800,000 in checks and wire payments from the Energy Broker Company via Windswept and BAJPC during that period.

  C. In January 2015, defendant Joyce contacted the Ethics Commission asking whether he could help a client, an energy business (*i.e.*, the Energy Broker Company), by approaching public entities, such as counties, on behalf of the client.  By referring to the energy business as a "client," defendant Joyce materially and falsely described his relationship with the Energy Broker Company as a lawyer-client relationship, when in reality, defendant Joyce was

a sales broker for the Energy Broker Company, and was not retained as its attorney.

21.     From in or about early 2011 to in or about March 2015, in exchange for kickback payments to be made pursuant to his agreement with the Energy Broker Executive, defendant Joyce agreed to use his official position as State Senator to exert pressure on and advise officials within the District and elsewhere in Massachusetts to take official action in favor of the Energy Broker Company, as specific opportunities arose, without disclosing to those officials that defendant Joyce had a financial interest in the energy contracts and projects obtained by the Energy Broker Company, including the following:

| Town Official Advised by Defendant Joyce | Official Act(s) to be Obtained for the Energy Broker Company (EBC) | Approximate Dates | Kickbacks mailed/wired to Windswept and BAJPC |
|---|---|---|---|
| Randolph – Town Manager | Appoint and re-appoint EBC exclusive energy consultant for Randolph; Town approval of EBC-brokered energy contract | 2011-2016 | $20,071 |
| Easton – Town Administrator | Appoint EBC exclusive energy consultant of record for Easton; Town approval of EBC-brokered energy contract | 2013-2016 | $14,759 |
| East Bridgewater – Town Administrator | Appoint EBC energy consultant for East Bridgewater; Town approval of EBC-brokered energy contract | 2014-2016 | $10,131 |
| Holbrook – Town Administrator | Appoint EBC exclusive energy consultant of record for Holbrook; Town approval of EBC-brokered energy contract | 2014-2016 | $3,148 |
| Southbridge – Town Manager | Appoint EBC exclusive natural gas consultant for Southbridge; Town approval of EBC-brokered energy contract | 2015 | $664 |
| Total Kickbacks | | | $48,773 |

22.     On or about September 9, 2014, defendant Joyce, on his Massachusetts State Senate letterhead, filed a letter addressed to the Chair of the Massachusetts Department of Public Utilities ("DPU"), which stated:

> I am writing to urge the Department of Public Utilities to act swiftly in providing guidance to utility providers under Section 3 of Chapter 149 of the Acts of 2014, *An Act relative to natural gas leaks*.
>
> This provision requires DPU to authorize gas companies, to design and offer programs to customers which increase the availability, affordability and feasibility of natural gas service for new customers. This is an important piece of legislation.   There are many families in my communities who are eager to receive natural gas service, but the costs are currently prohibitively expensive.
>
> I urge DPU to provide the necessary guidance to gas providers as soon as possible.   Please do not hesitate to contact me should you need additional information about the importance of this program for the communities that I represent.

As an energy broker, defendant Joyce received commissions on natural gas sales to Randolph, Easton, and Southbridge.   Any increase in the availability of natural gas sales afforded defendant Joyce more gas commission opportunities via the Energy Broker Company.   Defendant Joyce did not disclose to the DPU in the letter that he collected natural gas commissions as an energy broker.

23.     At least as early as January 2012, defendant Joyce assisted the Energy Broker Company in obtaining a client, a private college in Easton, Massachusetts (the "Easton College"), which was interested in installing solar panels on its campus (the "Solar Panel Project").

24.     Defendant Joyce agreed to use his official position as State Senator to take official action in the State Senate and to exert pressure on and advise officials within the DPU to take official action in favor of the Energy Broker Company in connection with the Solar Panel Project at the Easton College as follows:

10

A. From at least as early as January 2012, defendant Joyce and the Energy Broker Executive worked together to broker a deal with the Easton College and other parties to move forward with the Solar Panel Project at the Easton College.   If defendant Joyce procured the Easton College as a client for the Energy Broker Company, defendant Joyce stood to receive thousands of dollars in kickbacks in the form of energy broker commissions upon completion of the Solar Panel Project.

B. For the Solar Panel Project to succeed, however, defendant Joyce and the Energy Broker Executive needed the local utility company (the "Local Utility") to refrain from exercising so-called utility company "franchise rights" – rights that would have enabled the Local Utility to limit use of its power lines to transport any solar generated electricity across a public roadway from the solar panel site to the Easton College.

C. In or about late March 2012, defendant Joyce had a member of his Senate Office staff research state legislation that would "stop the utilities from exercising their so-called franchise rights in order to thwart projects, such as their practice of not allowing [energy] suppliers to cross the road[.]"

D. In late March to early April 2012, defendant Joyce filed an amendment to Senate Bill number 2200 that provided that any company that was engaged in the distribution of electricity "shall not exercise its franchise rights in a way that would affect the distribution and sale of electricity by on-site combined heat and power facilities to end use customers[.]"   Defendant Joyce believed that the amendment would be favorable to the Easton College's Solar Panel Project.

E. In or about September 2012, the Easton College appointed the Energy Broker Company as its exclusive energy consultant of record in connection with the Solar Panel Project.

F. In mid-January 2013, defendant Joyce and the Energy Broker Executive learned that the Local Utility had petitioned the DPU for a ruling regarding the Local Utility's ability to exercise its utility franchise rights, and that the DPU could possibly halt or delay the Solar Panel Project.

G. In January 2013, defendant Joyce disclosed to the Ethics Commission that he represented parties involved in a solar panel project at a college in Easton "in [his] private capacity as an attorney," and that he "intend[ed] to file legislation" that would be favorable to such project.   (Defendant Joyce filed this legislation under Senate Bill No. 1599).   Defendant Joyce never disclosed to the Ethics Commission that (i) he was working as a sales broker for the Energy Broker Company on the Solar Panel Project; (ii) he had already received commissions on the Solar Panel Project; and (iii) he had already filed favorable legislation

eight months earlier.   Moreover, in an attempt to disguise his relationship with the Energy Broker Company as an attorney-client relationship, defendant Joyce asked the Energy Broker Executive to retain defendant Joyce as an attorney for "one dollar," which the Energy Broker Executive declined.

H.  In February 2013, defendant Joyce emailed the Ethics Commission asking whether his law firm could be retained by clients to argue before the DPU on behalf of the Solar Panel Project.   The Ethics Commission responded that defendant Joyce could not be compensated for appearing before the DPU. Defendant Joyce never disclosed to the Ethics Commission that he would receive energy broker commissions in connection with the Solar Panel Project, regardless of whether or not his law firm was retained.

I.  At least as early as in or about February 2013, defendant Joyce and the Energy Broker Executive agreed to use defendant Joyce's "clout" as State Senator to argue before the DPU on behalf of the Solar Panel Project.

J.  In March 2013, defendant Joyce submitted a legal brief to the DPU, urging that the "project ... should be permitted to move forward as planned without further delay."   During early 2013, defendant Joyce also contacted DPU employees regarding the project as part of an effort to get a favorable DPU decision.

K.  Ultimately, the DPU decided not to halt or delay the Solar Panel Project, and from in or about 2012 to early 2016, defendant Joyce received approximately $135,564 in secret energy broker commissions on the Solar Panel Project from the Energy Broker Company via checks and interstate electronic wires to Windswept.

**The Developer Kickback Scheme**

25.   There was an individual (the "Developer") who purchased and developed real estate in Milton and was an owner of two Massachusetts car dealerships, both constituting activities which involved purchasing goods and services in and affecting interstate commerce. . Defendant Joyce was friends with the Developer and, at least as early as in or about October 2012, approached the Developer about purchasing and redeveloping the Milton Women's Club (the "Milton Women's Club" or "MWC"), an historic Milton club that was dedicated to promoting women's issues and causes, but that had fallen into disrepair.

26.     To maximize profits on redeveloping the MWC, defendant Joyce and the Developer agreed that the Developer's purchase of the MWC property had to be contingent upon the Developer's ability to tear down the MWC and subdivide the MWC property into four lots, which would require Milton Planning Board approval.   The Milton Planning Board had five voting members, including a Chairman.   On or about October 15, 2012, defendant Joyce emailed the Developer regarding the purchase of the MWC property, writing: "I suggest that we try for $600k, no inspection, finance contingencies but a 90 day due diligence period. ... We would make money even if four lots."

27.     From at least as early as October 2012 through 2014, defendant Joyce and the Developer conspired to use defendant Joyce's official position as State Senator to take official acts, including exerting pressure on and advising the Milton Planning Board members to take official action in favor of the Developer, as specific opportunities arose.   In exchange for defendant Joyce's official action, the Developer agreed to pay a concealed kickback to defendant Joyce, which was ultimately paid to defendant Joyce in the form of a 2014 Jeep from one of the Developer's car dealerships.   Defendant Joyce and the Developer furthered their corrupt scheme as follows:

> A. On or about April 15, 2013, defendant Joyce emailed the Chairman of the Milton Planning Board (the "Planning Board Chair"), to advise the Planning Board Chair to approve the Developer's request for a four-lot subdivision waiver – telling the Chair that the MWC development project "falls apart" if the Planning Board did not approve the waiver.
>
> B. On or about April 18, 2013, defendant Joyce again emailed the Planning Board Chair to advise the Planning Board Chair to approve the waiver – asking the Chair whether it was likely the "Planning Board would waive the 50' [roadway width] requirement[.]"
>
> C. On or about August 7, 2013, in response to the Developer's email complaining

about the Planning Board Chair's interference with the MWC project, defendant Joyce emailed the Developer: "He [the Planning Board Chair] can be very reasonable. We just need to talk to him. I can set up meeting upon my return."

D. From in or about August 2013 to early September 2013, with the purpose of advising the Planning Board Chair to act favorably on the Developer's waiver request, defendant Joyce asked the Planning Board Chair to meet with the Developer at the MWC property.

E. On or about September 15, 2013, defendant Joyce met with the Planning Board Chair and the Developer at the MWC site, at which meeting defendant Joyce advised the Planning Board Chair that waivers to permit four lots would be beneficial for the development.

F. On or about September 25, 2013, in an attempt to curry official influence with the Planning Board Chair, defendant Joyce directed his Senate Chief of Staff in an email to "prioritize [funding for the Broderick Stable] in the upcoming bond bills and/or budget." The Planning Board Chair had earlier sought defendant Joyce's support in a request for state aid for the Broderick Stable in the Blue Hills Reservation in Milton, a structure that had fallen into disrepair. (The Planning Board Chair was a member of a non-profit organization that sought to preserve and restore the Blue Hills Reservation. Defendant Joyce's efforts culminated in an additional line item to the 2013-2014 state budget providing for $1,000,000 in state funding for the renovation of the Broderick Stables.)

G. On or about September 26, 2013 the Milton Planning Board held a public hearing on the proposed development of the MWC, including the decision on whether to grant waivers to the project to permit the subdivision into four lots. According to Planning Board minutes: "[The Planning Board Chair] stated that he would be ready to vote for the plan at the next meeting. .... The Board voted to generally approve waivers .... [The Planning Board Chair] stated that he will draft a proposed decision."

H. On or about October 3, 2013, defendant Joyce emailed the Developer: "... [the Planning Board Chair] came through as I said he would."

I. On or about October 7, 2013, defendant Joyce emailed the Developer: "I spoke with [the Planning Board Chair] this morning. .... I will speak with ["Planning Board member X"] to try to get his votes even without the peer review being finished. We shouldn't need him as we have three votes, but better safe than sorry."

J. On or about October 9, 2013, a new problem arose regarding drainage issues

14

for the MWC project, when defendant Joyce emailed the Developer: "I had [Planning Board member X's] votes, except for the driveway. [Planning Board member X] now says he can't vote favorably if the DPW director says the drainage doesn't work. Asking for a continuance [of the upcoming Planning Board meeting] makes sense."

K.   After a continuance, on or about October 24, 2013, the Milton Planning Board, including the Planning Board Chair and Planning Board member X, voted 4-to-1 in the Developer's favor, granting the necessary waivers for the MWC proposed subdivision into four lots.

28.   To conceal their scheme, from in or about October 2012 to early 2014, defendant Joyce and the Developer agreed to take and did take several steps to keep secret defendant Joyce's financial involvement with the Developer and the Milton Women's Club, which included, but was not limited to, the following:

A.   In an April 15, 2013 email to the Planning Board Chair, defendant Joyce falsely represented himself to the Planning Board Chair as "the pro bono broker" on the proposed sale of the Milton Women's Club, stating: "Please take a look at this. [The Milton Planning Director] had told women's club officers that five homes, possibly six could be built. Buyer would be happy with four now. Otherwise it falls apart. I'm the pro bono broker." Defendant Joyce falsely described himself to the Planning Board Chair as the "pro bono broker" in order to conceal defendant Joyce's private financial motive in having the waiver approved.

B.   On or about September 19, 2013, the Developer scheduled a meeting at the Milton Women's Club to garner local support from neighbors abutting the MWC property. Regarding this meeting, on September 19, 2013, defendant Joyce emailed the Developer: "Please keep my name out of this." The Developer responded via email: "I have never mentioned your name other than to say that you were trying to help the Women's club find a buyer."

C.   On or about September 27, 2013, the Boston Globe contacted defendant Joyce's Senate office regarding defendant Joyce's role in the MWC project. In response to the Globe's query, defendant Joyce and the Developer emailed each other that same date to coordinate their false statements if approached by the Globe. The Developer emailed defendant Joyce: "If anyone ever asks me I will say that you [defendant Joyce] asked me to preserve the building but it was impossible." Defendant Joyce responded via email to the Developer: "And that I was asked to help by women's club members and wouldn't take any fee."

D. On or about October 9, 2013, at a public Milton Planning Board hearing on the MWC project, a member of the Milton Women's Club asked the Board whether Senator Joyce was the Developer's attorney for the project and whether Joyce introduced the MWC property to the Developer.   In response, the Developer stated to the Planning Board: "I have not paid him [Senator Joyce] one dollar and ... he said he would not accept any payment from any party.... He's just doing this because he was trying to help out the Women's Club.   And as our state senator that's an appropriate thing for him to do – to help people in the town and be responsive to their needs...."

29.     On or about November 21, 2013, after obtaining Milton Planning Board approval, the Developer purchased the MWC property for approximately $625,000.   From in or about December 2013 to January 2014, defendant Joyce instructed the Developer that defendant Joyce wanted to receive his payment for the MWC project in the form of a Jeep from one of the Developer's car dealerships.

30.     In order to coordinate defendant Joyce's kickback payment from the Developer, defendant Joyce and the Developer took the following steps to launder the corrupt proceeds:

A. Defendant Joyce and the Developer agreed that defendant Joyce would receive a 2014 Jeep Cherokee, which was valued at approximately $34,700.

B. Against the $34,700 price tag, defendant Joyce would trade in another of defendant Joyce's vehicles for $12,000, leaving an outstanding balance of approximately $24,500 (which included additional sales tax, registry costs, and other fees).

C. On December 31, 2013, the Developer issued defendant Joyce a check for $4000 for defendant Joyce's assistance with the Developer's prior development of another property located in Milton, MA.

D. On or about January 10, 2014, the Developer issued defendant Joyce a check for $20,500 (equal to the outstanding approximate balance of the 2014 Jeep), with the entry, "consulting" on the memo line.

E. On or about January 10, 2014, the same date that the Developer gave defendant Joyce the $20,500 check, defendant Joyce took title and possession of the 2014 Jeep from the Developer's car dealership.

F. On or about January 17, 2014, defendant Joyce issued a $15,000 check payable to the Developer's car dealership.

G. On or about January 31, 2014, defendant Joyce issued a $5,000 check payable to the Developer's car dealership.

H. On or about February 13, 2014, defendant Joyce issued a $4,500 check payable to the Developer's car dealership to satisfy the balance owed on the 2014 Jeep.

31.    Thereafter, in 2014, defendant Joyce continued to use his official position and Senate Office to assist the Developer on the MWC project by, among other things, directing his Senate staff to pressure a Massachusetts utility company to expedite the provision of electricity to the newly constructed lots on the MWC property.    For example, on or about September 4, 2014, defendant Joyce emailed the Developer: "Are you looking for any action on our end (from my State House office),?" to which the Developer responded: "Yes. ... [We] need [power] done in 30 days at the outside."    With the understanding that defendant Joyce's spouse – a residential real estate broker – would be a sales broker for the newly developed homes on the MWC property, defendant Joyce then used his Senate staff to contact the Massachusetts utility company to expedite delivery of power to the MWC lots without disclosing to his staff his relationship with the Developer or the MWC project.

**The Energy Insurance Brokerage Company Bribery Scheme**

32.    There was an individual (the "EIB CEO") who was the founder and chief executive officer of a Delaware energy insurance brokerage holding company (the "EIB Company"), which owned, among other entities, a Massachusetts energy industry insurance agency that did business in and affecting interstate commerce.    As an insurance agency, the EIB Company was required

17

to comply with Massachusetts insurance rules and regulations that were enforced by the Massachusetts Division of Insurance (the "DOI"), and dealt regularly with the DOI with respect to licensing and other insurance regulatory issues.

33.    At least as early as in or about 2010, the EIB CEO was interested in promoting property-assessed-clean-energy ("PACE") legislation in Massachusetts.    PACE was an alternative energy financing program that required state legislation because its funding was derived from issuing bonds that were secured by increased property tax assessments.    To incentivize PACE projects, alternative energy companies (for example, a solar panel company) would guarantee that the value of the energy savings would equal or surpass the cost of the property tax assessment that was used to fund the solar panel installation.    The solar panel company would then obtain insurance to fulfill the guarantee in the event that the energy savings did not match the costs of the solar panel installation.    The EIB CEO sought to increase and expand the EIB Company's business by selling an insurance product for the energy savings guarantees on PACE projects.

34.    In or about 2010, after meeting defendant Joyce and Partner 1, the EIB CEO hired defendant Joyce, Partner 1, and Partnership 1 to do legal work, including appearing before the DOI and performing insurance defense litigation for EIB Company and EIB Company's insurance partners.    From in or about February 2010 to in or about December 2015, the EIB Company paid and caused to be paid to defendant Joyce, through the Joyce Law Office, including Partnership 1, approximately $377,169 in fees.

35.    Although the EIB Company had already paid and caused to be paid thousands of dollars to defendant Joyce and Partner 1 to provide legal work on behalf of the EIB Company and

18

its insurance partners, defendant Joyce and the EIB CEO agreed that defendant Joyce would be given purported additional legal business and fees in return for: (i) defendant Joyce's official action and assistance with respect to PACE legislation; and (ii) defendant Joyce's ongoing official action and assistance in obtaining favorable official action from the DOI.

36.     From at least as early as in or about 2010 to 2015, defendant Joyce and the EIB CEO conspired to use defendant Joyce's official position as State Senator to (i) promote, sponsor, and file PACE legislation and (ii) exert pressure on and advise DOI officials to take official action in favor of the EIB Company, as specific opportunities arose, in exchange for a stream of corrupt payments and other benefits, as noted above, and as follows:

**PACE Legislation**

A.  On or about July 24, 2010, the EIB CEO texted defendant Joyce: "Brian I want to come see you sometime tommorow [sic] … I have an idea as it relates to financing energy efficiency projects that I would like to brain storm with you. It would probably need to be something that comes through the administration or legslature [sic]."

B.  On or about May 9, 2011, the EIB CEO emailed defendant Joyce: "I wanted to see if you had anytime this week to have a meeting as respect to PACE.  We need to retain the Joyce Law Firm in regard to providing legal work in respect to establishing a program that would be marketed by our independent insurance agents and brokers."

C.  In or about June 2011, the EIB CEO hired defendant Joyce's relative as a summer intern at the EIB Company, explaining to the EIB Company human resources department in an email: "[His/her relative, defendant Joyce] does a lot for the company."  During the internship, defendant Joyce's relative wrote a summary of then-existing Massachusetts PACE law.  From June through August 2011, the EIB Company paid defendant Joyce's relative approximately $2,796 in salary.

D.  On or about September 9, 2011, the EIB CEO emailed defendant Joyce a copy of legislation, writing: "Please note [on] page 23 Renewable Energy Revolving Fund (PACE Enabling Legislation)."    That same month, EIB Company joined the PACE Commercial Consortium, a group of private companies seeking to

19

promote PACE.

E. At least as early as December 21, 2011, defendant Joyce agreed to speak at a public symposium, dubbed, "Mobilize New England," which was sponsored by EIB Company and geared toward promoting PACE legislation.

F. On or about December 30, 2011, defendant Joyce and the EIB CEO agreed in an email that "Effective January 1, 2012, [defendant Joyce] will serve as [EIB Company's] outside general counsel, for a fee of $5000 per month payable in advance on the first of each month. *** We agreed that while I am also a Massachusetts State Senator, my actions on behalf of [EIB Company] will be as an attorney and not as a public official.   We agreed that at all times we will act within the confines of state ethics and other legal requirements."   Despite defendant Joyce's acknowledgement of the appearance of a conflict of interest, and agreement to "act within the confines of state ethics," defendant Joyce never filed a "Disclosure of Appearance of Conflict of Interest" with respect to his new monthly $5,000 payment from EIB Company, as required by M.G.L, Ch. 268A, § 23(b).

G. On or about January 9, 2012, defendant Joyce spoke at the "Mobilize New England" conference at the Boston Convention Center with the purpose of promoting PACE legislation.

H. Beginning on or about January 17, 2012, the EIB Company began making $5,000 payments to defendant Joyce on a monthly basis through in or about January 2016, totaling approximately $240,000.   Throughout this period from January 2012 through 2016, the EIB CEO and, at the EIB CEO's direction, the EIB CEO's relative (the "EIB CEO's relative"), also an EIB Company employee, corresponded and met with defendant Joyce and defendant Joyce's Senate Office to coordinate the passage of PACE legislation in Massachusetts.

I. On or about July 11, 2012, defendant Joyce emailed the EIB CEO with the subject line, "PACE," "FYI I'm working on a $1 billion Mass Development bond offering.   It may not be ready for passage by July 31st, but there will be a lot of discussion generated and it should help accelerate activity on energy efficiency projects for commercial and industrial properties in Massachusetts next year."   Defendant Joyce was referring to House Bill No. 4119, which was before the Senate Committee on Bonding, Capital Expenditures and State Assets (the "Senate Bonding Committee").   Defendant Joyce was the Chair of the Senate Bonding Committee in 2012.

J. On or about July 13, 2012, as Chair of the Senate Bonding Committee, defendant Joyce amended House Bill No. 4119 to include loan programs for municipal PACE projects.   House Bill No. 4119 was then forwarded to the

Senate Ways and Means Committee.

K. On or about July 13, 2012, at approximately 1:59 p.m., defendant Joyce called the EIB CEO to discuss how to amend the pending bill to include language that was favorable to the EIB Company.

L. On or about July 13, 2012, at approximately 3:24 p.m., the EIB CEO emailed the EIB CEO's relative, asking the relative to provide defendant Joyce additional PACE language that was favorable to the EIB Company for inclusion in House Bill No. 4119.   The EIB CEO wrote: "Brian Joyce needs us to pull the language out of the California bill as it relates to guarantees and how they need to have collateral including one option being insurance.   Needs to make sure it is in this bill."

M. On or about July 13, 2012, at approximately 4:49 p.m., the EIB CEO's relative emailed defendant Joyce and the EIB CEO additional PACE language that was favorable to the EIB Company for inclusion in House Bill No. 4119, which included:   "For energy efficiency improvements that exceed five hundred thousand dollars ($500,000), the contractor installing the improvements or the property owner shall obtain a guarantee on the energy and water cost savings . . . by obtaining a security in the full amount of the cost savings.   The security shall be in any of the following forms ... Energy savings insurance issued by an A.M. Best 'A' or better rated carrier ...." (hereinafter, the "PACE insurance language").

N. On or about July 16, 2012, defendant Joyce's Senate Office Legislative Director emailed counsel for the Senate Ways and Means Committee: "Senator Joyce would like to request that the following language be added to subsection 2 ....," which included the PACE insurance language. The email further stated: "Unfortunately this change came to our attention a little too late!"

O. On or about July 17, 2012, at defendant Joyce's request, House Bill No. 4119 was amended to include the PACE insurance language.

P. On or about July 19, 2012, during a State Senate Session, defendant Joyce spoke in support of the PACE amendments to House Bill No. 4119.   Defendant Joyce's PACE amendments to House Bill No. 4119 were not approved in the 2012 legislative session, but were submitted to the Massachusetts Department of Energy Resources ("DOER") for further study.

Q. On or about December 21, 2012, the EIB CEO's relative emailed defendant Joyce, defendant Joyce's Chief of Staff, and the EIB CEO to discuss how the EIB Company could "potentially collaborate and or provide assistance" on PACE legislation.   On December 21, 2012, defendant Joyce emailed the EIB

CEO, the EIB CEO's relative, and his Chief of Staff, directing the EIB CEO's relative to coordinate with his Chief of Staff.

R. On or about January 4, 2013, the EIB CEO's relative recommended to defendant Joyce's Chief of Staff that insurance guarantees be part of any PACE legislation enacted in Massachusetts.

S. On or about January 8, 2013, the EIB CEO's relative emailed defendant Joyce's Chief of Staff recommending that the DOER include the PACE insurance language in legislation for statewide PACE programs. The EIB CEO's relative added that if the PACE insurance language was not included in legislation, an acceptable alternative would be "specifications within the underwriting guidelines set forth by the DOER[.]" The DOER ultimately did not recommend including the PACE insurance language.

T. On or about January 14, 2013, the EIB CEO's relative proposed to defendant Joyce's Chief of Staff that the phrase "fueling jobs" should be used in the title of proposed PACE legislation.

U. On or about January 17, 2013, defendant Joyce filed PACE legislation as a stand-alone bill under Senate Bill No. 177, titled "An Act fueling job creation through energy efficiency" ("S.B. 177" or the "Commercial PACE Bill"). The Commercial PACE Bill did not contain the PACE insurance language, but it included the alternative language, which required that any PACE project be evaluated for "compliance with financial underwriting guidelines established by the agency."

V. On or about July 26, 2013, defendant Joyce emailed the EIB CEO regarding the Commercial PACE Bill: "I had dinner with the Majority Leader last night, and we discussed the legislation. I will begin pushing it to the forefront of the legislative agenda after Labor Day."

W. On or about September 10, 2013, defendant Joyce testified in support of the Commercial PACE Bill at a joint legislative committee hearing in Springfield, Massachusetts. Defendant Joyce's Senate Office also issued a press release promoting PACE legislation. That same day, defendant Joyce sent the EIB CEO an email that stated, "Tell [the EIB CEO's relative] that I'm in Springfield testifying on behalf of our clean jobs bill (Commercial PACE Bill)."

X. On or about November 11, 2013, the EIB CEO's relative emailed defendant Joyce's Chief of Staff, inviting the Chief of Staff to promote the Commercial PACE Bill at a meeting before the City of Cambridge Climate Protection Action Committee ("Cambridge CPAC"), an advisory committee to the Cambridge City Manager.

Y.  On or about November 14, 2013, defendant Joyce's Chief of Staff and an EIB Company representative promoted the Commercial PACE Bill before the Cambridge CPAC at its committee meeting.

Z.  In or about December 2013, the EIB CEO's relative continued to advise and collaborate with defendant Joyce's Senate Office on re-drafting the Commercial PACE Bill to include language on "building resiliency" improvements in order to garner additional statewide support for PACE legislation.

AA.  In or about July 2014, the Commercial Pace Bill was amended under Senate Bill No. 2255 ("S.B. 2255" or the "Amended Commercial Pace Bill") to include this language:  "The department ... may promulgate regulations to include eligibility for resiliency improvements in the commercial sustainable energy program."

BB.  On or about July 10, 2014, during a State Senate Session, defendant Joyce spoke in support of PACE legislation in the Amended Commercial Pace Bill and asked that the State Senate take a vote upon the proposed legislation.  On or about that date, defendant Joyce voted in favor of S.B. 2255 and the State Senate passed S.B. 2255, but the proposed bill did not pass the State House of Representatives that year.

CC.  From at least as early as in or about August 2014 to December 2014, the EIB CEO permitted defendant Joyce to participate in EIB Company's private offering of its common stock ("EIB Common Stock"), which was not open to the public.  During this period, defendant Joyce purchased 65,000 shares of EIB Common Stock for approximately $471,250.

DD.  On or about January 8, 2015, defendant Joyce requested, as his first choice, to sit on the Joint Committee on Telecommunications, Utilities and Energy, a joint Senate and House committee that considered legislation involving alternative energy, including PACE legislation.

EE.  On or about January 15, 2015, defendant Joyce re-filed the Amended Commercial Pace Bill, under Senate Bill No. 1774 ("S.B. 1774").

FF.  On or about January 21, 2015, defendant Joyce gained appointment to the Joint Committee on Telecommunications, Utilities and Energy and became one of three Senate Assistant Majority Leaders.

GG.  On or about March 30, 2015, a Boston Globe reporter called the EIB Company to request an interview with the EIB CEO to discuss EIB Company's

relationship with defendant Joyce.   The EIB CEO then told defendant Joyce about the Boston Globe phone call.

HH.   On or about March 30, 2015, defendant Joyce emailed the EIB CEO: "Suggest you not return call please."

II.   On or about April 1, 2015, defendant Joyce emailed the EIB CEO's relative a progress report on the Amended Commercial Pace Bill.

JJ.   On or about April 7, 2015, the Boston Globe asked defendant Joyce about defendant Joyce's relationship with the EIB Company.

KK.   On or about April 17, 2015, defendant Joyce resigned from the Joint Committee on Telecommunications, Utilities and Energy.

LL.   On or about June 25, 2015, defendant Joyce wrote and filed a letter with the Joint Committee on Telecommunications, Utilities and Energy, in support of S.B. 1774:   "I write today in support of S. 1774, *An Act fueling job creation through energy efficiency,* which I filed.   This bill will be heard by the Joint Committee on Telecommunications, Utilities and Energy on June 30, 2015.   I respectfully request your prompt and favorable consideration."

**Massachusetts Division of Insurance Official Action**

A.   From in or about June 2010 through December 2011, at the EIB CEO's direction, defendant Joyce used his official position to advise DOI officials to assist the EIB Company in obtaining DOI approval to sell a certain insurance product to oil dealers.   By in or about December 2011, the DOI took no adverse action with respect to EIB Company's oil dealer insurance product.

B.   Prior to June 3, 2013, an out-of-state insurance company ("Ins. Co. A") filed a complaint with the DOI against EIB Company.   Because Ins. Co. A's complaint with the DOI had the potential to result in license suspension, fine, or other administrative action by the DOI against the EIB Company, the EIB CEO determined that obtaining favorable DOI action was vital to EIB Company's business.   Defendant Joyce and the EIB CEO agreed that defendant Joyce would use his official position to advise the Commissioner of the DOI (the "Commissioner") to refrain from taking official action adverse (*e.g.*, fine, license suspension, or administrative action) to the EIB Company.

C.   On or about June 3, 2013 at the Department of Insurance, defendant Joyce, the EIB CEO, and other EIB Company representatives met with the Commissioner to obtain favorable DOI action on Ins. Co. A's complaint against the EIB Company.   In recounting the meeting, defendant Joyce emailed the

Commissioner on or about July 11, 2013:

> [Commissioner], You'll recall that we met on June 3 to discuss the [EIB Company/Ins. Co. A] situation wherein we detailed the dispute between the parties and addressed the issues contained in [Ins. Co. A's] letter to the Insurance Division.   I have a conference call with [EIB Company] tomorrow morning.   Is it fair to say that no further action is required of them at this time from the Division?   Thanks, Brian

> The Commissioner responded that no further action was required and, ultimately, with respect to Ins. Co. A's complaint, the DOI took no action (*e.g.,* license suspension, fine, or other administrative action) that was adverse to the EIB Company, and terminated its investigation of the matter.

D. Prior to September 17, 2014, at the EIB CEO's direction, defendant Joyce used his official position to obtain a certification letter from the DOI to permit the EIB Company to secure managing general agent ("MGA") insurance licenses in other states. On or about September 17, 2014, the DOI issued the MGA certification letter to the EIB Company.

37.   In order to promote, facilitate, and prevent detection of this corrupt scheme, defendant Joyce took numerous steps to conceal the extent of his relationship with the EIB Company, which included, but was not limited to, the following:

A. Defendant Joyce did not disclose to Partner 1 the $5,000 monthly payment from EIB Company to defendant Joyce, and began to use Partner 1's law associate to do work pursuant to the $5,000 payment.   Only after Partner 1 discovered that defendant Joyce was using Partner 1's law associate did defendant Joyce disclose the monthly $5,000 payment and begin to share a portion of it.

B. Defendant Joyce did not disclose his monthly receipt of $5,000 from the EIB Company to his Senate Chief of Staff.

C. During the time that defendant Joyce performed official acts in support of PACE legislation (*e.g.,* House Bill No. 4119, S.B. 177, S.B. 2255, and S.B. 1774), defendant Joyce did not disclose to the Ethics Commission: (i) his monthly receipt of $5,000 from the EIB Company; (ii) his beneficial ownership of approximately $471,250 in EIB Common Stock; and (iii) the fact that Defendant Joyce was using the Senate Office to promote, draft, and file legislation at the EIB CEO's and the EIB CEO's relative's direction.

D. On or about April 3, 2015, in response to a Globe reporter's inquiry, defendant

25

Joyce falsely claimed, through his counsel: "Senator Joyce has not filed any legislation to benefit [the EIB Company]" (underline in original).

E.  From in or about October 2015 to January 2016, defendant Joyce, through an attorney, made materially false and misleading statements to the Ethics Commission, which included, but were not limited to, defendant Joyce's claim that: (i) because such PACE bills did not contain an insurance provision, he "did not believe that his bill [S.B. 177; S.B. 1774], either directly or indirectly, could reasonably be viewed as benefitting [EIB Company];" and (ii) defendant Joyce understood and believed that his role in the June 3, 2013 meeting with the DOI Commissioner "was simply to provide notice to [the DOI of Ins. Co. A's complaint against EIB Company]" and that defendant Joyce "believed that his attendance at the meeting was ministerial in nature."

F.  Defendant Joyce did not disclose to the Ethics Commission as required on his 2011 SFI that his relative received over $2,000 in compensation from EIB Company.

**The EIB Common Stock – IRS Wire Fraud Scheme**

38.     In 2014, EIB Company sought to raise additional capital by selling shares of its common stock.   In or about the summer and fall of 2014, defendant Joyce learned from the EIB Company's Director of Finance that EIB Company planned to issue stock as part of its plan to go public and/or be acquired by another company.   EIB Common Stock, however, was not publicly traded and EIB Company was permitted only to sell its stock privately via a "private placement" to certain individuals and entities, and during a certain time window.

39.     Defendant Joyce, however, wanted to obtain EIB Common Stock from the private placement so that defendant Joyce could become one of the larger and more influential shareholders of EIB Company, and also reap a greater profit from his corrupt relationship with the EIB CEO by obtaining the EIB Common Stock prior to any public offering of EIB Common Stock. The EIB CEO agreed to offer defendant Joyce the privately held EIB Common Stock in exchange for defendant Joyce's continued official action with respect to PACE and DOI matters.

40.     To ensure that potential investors were qualified to purchase EIB Common Stock, EIB Company required each investor to enter into an agreement ("Subscription Agreement") with the EIB Company and to fill out a questionnaire ("Accredited Investor Questionnaire" or "Questionnaire"). The Subscription Agreement required each investor to represent and warrant that the information provided by the investor in the Accredited Investor Questionnaire was true and accurate. The Questionnaire also required each investor to declare whether the investor would hold EIB Common Stock as an individual, through a trust, or through a corporation, partnership, or limited liability company.

41.     With EIB Company's assistance, however, defendant Joyce concealed his ownership of EIB Common Stock from the public and the Ethics Commission by doing the following:

> A. Defendant Joyce did not complete any Accredited Investor Questionnaires, which would have required defendant Joyce to truthfully disclose the capacity in which defendant Joyce owned and beneficially held EIB Common Stock.
>
> B. Defendant Joyce created a fictitious individual retirement account ("IRA") to disguise defendant Joyce's ownership of EIB Common Stock as a retirement plan, which did not require disclosure on the SFI to the Ethics Commission.
>
> C. In October 2015, defendant Joyce, through an attorney, falsely declared to the Ethics Commission that defendant Joyce "did direct his retirement account 'Brian A. Joyce SEP IRA' to purchase stock in late 2014 and again in 2015," when in fact, no third party purchased the stock on the defendant Joyce's behalf, and defendant Joyce personally orchestrated the purchase of EIB Common Stock.

42.     From August 2014 to December 2014, defendant Joyce coordinated the purchase of EIB Common Stock through the use of a home equity line of credit and the liquidation of his and his spouse's simplified employee pension IRA ("SEP-IRA") funds, which were held by qualified IRA custodians, as follows:

27

| Check Date | SEP-IRA Liquidation (or Line of Credit Withdrawal indicated with *) | EIB Common Stock Purchase Date | JOYCE Personal Check (or Line of Credit Check *) Issued to EIB Company | Memo on Check |
|---|---|---|---|---|
| 8/30/2014 | $50,750* | 9/5/2014 | $50,750* | 7,000 Shares SEP IRA |
| 8/30/2014 | $25,375* | 9/5/2014 | $25,375* | 3,500 Shares SEP IRA |
| 10/4/2014 | $105,125 (Spouse SEP IRA) | 10/4/2014 | $105,125 | 14,500 Shares [Spouse] SEP IRA |
| 12/8/2014 | $72,500 (Spouse SEP IRA) | 12/10/2014 | $72,500 | 10,000 Shares [Spouse] SEP IRA |
| 12/8/2014 | $250,000 (Defendant Joyce SEP IRA) | 12/10/2014 | $217,500 | 30,000 Shares SEP IRA |
| **Totals** | **$503,750 withdrawn** | | **$471,250 paid to EIB Company** | **65,000 shares of EIB Common Stock** |

43.     Defendant Joyce's creation of fictitious retirement accounts for himself ("Brian A. Joyce SEP-IRA") and his spouse ("[Spouse] SEP-IRA") furthered the bribery scheme with the EIB CEO in that: (a) it permitted defendant Joyce to conceal his significant beneficial ownership of EIB Common Stock from the public and the Ethics Commission, while he actively pushed PACE legislation at the direction of the EIB CEO; and (b) it served as a vehicle for defendant Joyce to utilize retirement funds to purchase EIB Common Stock by defrauding the Internal Revenue Service ("IRS") in claiming that his purchase of EIB Common Stock was a tax-free IRA rollover, when, in fact, it was an early liquidation subject to additional taxation and early withdrawal penalties.

44.    To qualify as a non-taxable IRA rollover, IRA assets must be withdrawn from one qualified custodian and be received by another qualified custodian within a 60-day period.    Prior to August 2014, defendant Joyce and his spouse held over half a million dollars in SEP-IRA accounts that were maintained with qualified IRA custodians for several years.    Also, prior to his purchase of EIB Common Stock in or about August 2014, defendant Joyce had used his financial advisor (the "Financial Advisor") to complete proper tax-free transfers, or rollovers, of a portion of his SEP-IRA assets through a qualified IRA custodian ("IRA custodian").

45.    In or about October 2014, the Financial Advisor stated to defendant Joyce that he "strongly advise[d]" against defendant Joyce's proposal to use a significant amount of SEP-IRA assets to buy EIB Common Stock.    Additionally, during in or about August 2014 to October 2014, the IRA custodian stated that it would not authorize a purchase of EIB Common Stock as a tax-free rollover using defendant Joyce's existing SEP-IRA assets.

46.    Despite these admonitions, defendant Joyce created sham retirement accounts for himself and his spouse in order to conceal his stock ownership from the Ethics Commission and to defraud the IRS, as well as portray defendant Joyce's purchase of EIB Common Stock as a tax-free IRA rollover, as follows:

    A. On or about August 30, 2014, defendant Joyce borrowed $76,125 from a home equity line of credit ("HELOC") to purchase 10,500 shares of EIB Common Stock.    Defendant Joyce then, with the assistance of the EIB Company, created the appearance that the stock purchase was made through SEP retirement accounts by writing "SEP IRA" in the Subscription Agreements and on the memo lines of the HELOC funded checks that were used to purchase the shares.

    B. On or about October 2, 2014, defendant Joyce caused his spouse to liquidate $105,125 from the spouse's SEP-IRA account (maintained by a qualified IRA custodian) with the proceeds going to defendant Joyce's personal joint bank account with his spouse.    Defendant Joyce then issued a personal check for

$105,125 payable to EIB Company for 14,500 shares, causing "[Spouse] SEP IRA" to be inscribed in the Subscription Agreement and the memo line of the check.

C.  On or about December 8, 2014, defendant Joyce caused $250,000 and $72,500 to be liquidated from his and his spouse's respective custodian-managed SEP-IRA accounts with the proceeds going to defendant Joyce's personal joint bank account.   Defendant Joyce then used the proceeds to issue personal checks for $217,500 and $72,500, respectively, from his joint account payable to the EIB Company for 30,000 and 10,000 shares, with the inscription "SEP IRA" and "[Spouse] SEP IRA" in the Subscription Agreements and the memo lines of each respective check.

D.  On or about October 30, 2015, defendant Joyce, through counsel, submitted a letter to the Ethics Commission that falsely claimed that defendant Joyce "did direct his retirement account 'Brian A. Joyce SEP IRA' to purchase [EIB Common] stock in late 2014 and again in 2015."   Defendant Joyce knew this statement was false because (i) defendant Joyce personally executed the purchases, and not through a third party, and (ii) defendant Joyce initially purchased EIB Common Stock with funds that he obtained from a HELOC loan, and not with retirement funds.

E.  From 2015 to 2016, defendant Joyce submitted EIB Company shareholder letters to his Financial Advisor and the Ethics Commission as "proof" that his and his spouse's thousands of shares of EIB Common Stock were held in IRA accounts despite the fact that:

   i.   There was no IRA custodian for the shares.

   ii.  Defendant Joyce and his spouse maintained full ownership and control of 65,000 shares of EIB Common Stock.

   iii. As an EIB Company shareholder, defendant Joyce had the right to personally attend shareholder meetings, vote at meetings of EIB Company shareholders, and vote to elect members of EIB Company's board of directors.

47.     On or about September 8, 2015, defendant Joyce willfully caused to be electronically filed with the IRS a U.S. Individual Income Tax Return, Form 1040 for himself and his spouse for tax year 2014, falsely reporting early withdrawals from defendant Joyce's and his spouse's SEP-IRAs as qualifying tax-exempt rollovers in the amount of $427,629, and falsely

reporting a SEP-IRA deductible contribution of $80,502, of which $76,125 consisted of defendant

Joyce's purchase of EIB Common Stock with home equity line of credit funds.

**The Coffee Franchise Bribery Scheme**

48.     There was an individual (the "Franchise Owner"), who owned approximately over

one hundred franchises of a nationally branded coffee and pastry fast-food business (the "Coffee

Franchise") in Massachusetts and elsewhere.   From in or about 2010 to in or about early 2015,

defendant Joyce and the Franchise Owner conspired to use defendant Joyce's official position as

State Senator to promote, sponsor, and file state legislation that favored the Franchise Owner, as

specific opportunities arose, in exchange for a stream of benefits that included payments for

purported legal services and regular free deliveries of up to a thousand dollars' worth of coffee

and other goods to defendant Joyce.   From 2010 to 2015, defendant Joyce also never disclosed

that he had received any gifts from the Franchise Owner on his yearly SFI.

49.     The Franchise Owner provided and agreed to provide the following, among other

things, to defendant Joyce in exchange for defendant Joyce's official action:

> A.  From at least as early as 2010 to 2013, the Franchise Owner paid defendant
>     Joyce approximately $125,089 for purported legal services provided by
>     defendant Joyce.
>
> B.  Approximately each December from 2010 to 2014, the Franchise Owner
>     provided defendant Joyce with approximately 50 to up to 200 pounds of Coffee
>     Franchise coffee at no charge on each occasion for defendant Joyce to distribute
>     at town hall meetings and other events, or to give to other public officials.
>
> C.  Approximately each August from 2010 to 2014, the Franchise Owner provided
>     defendant Joyce with Coffee Franchise food and beverages at no charge for
>     defendant Joyce to distribute at a summer event that defendant Joyce hosted as
>     State Senator.
>
> D.  In or about January 2015, following defendant Joyce's request for 500 pounds
>     of coffee at cost, the Franchise Owner provided approximately 504 pounds of

Coffee Franchise coffee – approximate retail value of $4,278 – at no charge to defendant Joyce.

E.   From in or about 2011 and continuing through the beginning of 2016, the Franchise Owner, via the Energy Broker Company, paid approximately $16,438 in solar energy commissions to defendant Joyce, after defendant Joyce had persuaded the Franchise Owner to install solar panels on his franchises with the assistance of the Energy Broker Executive.

50.    In exchange for the stream of money, goods, and services that the Franchise Owner provided and agreed to provide to defendant Joyce, defendant Joyce took the following official action:

A.   In January 2011, defendant Joyce filed Senate Bill No. 1843, titled, "An Act further regulating franchise agreements" ("S.B. 1843").    S.B. 1843, if passed, would have provided greater protections to the Franchise Owner to operate franchise businesses and better avoid termination of any franchise license in Massachusetts.

B.   In July 2012, defendant Joyce moved to amend Senate Bill No. 2350 ("S.B. 2350") to include a provision that would protect "quick service restaurant" establishments, which included the Coffee Franchise, from lawsuits known as "tip pooling" lawsuits.

C.   In January 2013, defendant Joyce petitioned for legislation contained in Senate Bill No. 887, titled, "An Act relative to the pooling of tips" ("S.B. 887").    If passed, S.B. 887 operated to protect the Franchise Owner from potential tip pooling lawsuits.

D.   In January 2013, defendant Joyce filed Senate Bill No. 73, titled, "An Act protecting small business investments" ("S.B. 73").    If passed, S.B. 73 operated to afford the Franchise Owner similar franchise protections as S.B. 1843.

E.   In May 2013, defendant Joyce sponsored an amendment to Senate Bill No. 3, titled, "Protecting Small Business Investments," which operated to afford the Franchise Owner similar franchise protections to S.B. 1843.

F.   On or about November 19, 2013, at a State Senate legislative session, defendant Joyce obtained Senate consent to make a statement, and made a statement in support of amending Senate Bill No. 1925 to include language that would protect quick service restaurants from tip pooling lawsuits.

32

G. In January 2015, defendant Joyce filed Senate Bill No. 114, titled, "An Act protecting small business investments" ("S.B. 114"). If passed, S.B. 114 operated to afford the Franchise Owner similar protections as S.B. 1843 and S.B. 73.

H. In January 2015, defendant Joyce petitioned for legislation contained in Senate Bill No. 1001, titled, "An Act relative to the pooling of tips" ("S.B. 1001"). If passed, S.B. 1001, similar to S.B. 887, operated to protect the Franchise Owner from potential tip pooling lawsuits.

51.    To perpetuate this bribery scheme, defendant Joyce and others took steps to conceal his corrupt relationship with the Franchise Owner, including:

A. On or about December 14, 2011, defendant Joyce emailed the Franchise Owner requesting that the Franchise Owner make $10,000 in donations to the Massachusetts Democratic Party, writing, "Each check should be for $5000, with no reference to me."

B. In or about December 2013 to January 2014, at defendant Joyce's request, the Franchise Owner gave at least approximately 12 boxes of coffee to defendant Joyce for distribution at a January 2014 annual meeting and trade show.

C. In or about December 2014, defendant Joyce provided one pound of coffee from the Coffee Franchise to each State Senator as a holiday gift. This conduct was reported by the Boston Globe on or about January 30, 2015.

D. From in or about January 31, 2015 to February 1, 2015, defendant Joyce contacted the Franchise Owner and the Franchise Owner's relative (the "Relative"), who was also a Coffee Franchise employee, regarding the article.

E. On or about February 1, 2015, during an interstate telephone call between defendant Joyce and the Relative, defendant Joyce stated, in sum and substance, that defendant Joyce had a problem with the free coffee that the Franchise Owner provided to him in December 2014 and that defendant Joyce needed the Relative to create an invoice for the December 2014 coffee.

F. After the February 1, 2015 call, at defendant Joyce's direction, the Relative created a backdated invoice. The invoice was backdated to December 20, 2014 and purported to bill defendant Joyce $1,698 for 200 pounds of Coffee Franchise coffee.

G. In or about February 2015, defendant Joyce issued a check for $1,698 to one of

the Franchise Owner's Coffee Franchises.   Defendant Joyce fraudulently backdated the check to December 21, 2014 in order to create the false impression that defendant Joyce had paid for the 200 pounds of coffee at or around the time that defendant Joyce had received the free coffee in December 2014.

H. On or about April 7, 2015, a Boston Globe reporter contacted defendant Joyce's attorney inquiring about (i) Coffee Franchise coffee that defendant Joyce distributed in or about January 2014 and (ii) Coffee Franchise Coffee that defendant Joyce received in December 2014.

I. On or about April 10, 2015, defendant Joyce emailed the Franchise Owner and the Relative, claiming, "For the 2013 coffee, I did not bill you the attached legal charges, which would have totaled $1312.50.   I got 120 bags plus 20 gift boxes for a total cost of $1218.60."   Prior to April 10, 2015, however, the Franchise Owner and the Relative: (i) had never been invoiced for the attached legal charges of $1,312.50, which purported to pertain to a Coffee Franchise drive-thru in Millis, MA; and (ii) had never agreed to pay defendant Joyce with coffee in exchange for legal work pertaining to the Millis drive-thru.

J. From October to November 2015, the Ethics Commission contacted defendant Joyce through his attorney, inquiring about whether defendant Joyce had received Coffee Franchise coffee at no charge in late 2013 and in 2014.

K. On or about December 1, 2015, at defendant Joyce's direction, defendant Joyce's counsel emailed the Ethics Commission copies of the fraudulently backdated invoice and check, and stated that: "In late 2014, Senator Joyce purchased coffee from a [Coffee Franchise] franchisee ... owned by [the Franchise Owner]."   Defendant Joyce knew this statement was false because defendant Joyce had made no efforts to purchase the coffee before the publication of the January 30, 2015 Boston Globe article that referenced the coffee that defendant Joyce had distributed to other State Senators in December 2014.

L. On or about January 5, 2016, the Ethics Commission contacted defendant Joyce's attorney, requesting the Franchise Owner's contact information so that the Commission could interview the Franchise Owner regarding defendant Joyce's claim that he had provided legal services in exchange for free coffee in 2013.

M. From in or about January 5, 2016 to mid-January 2016, defendant Joyce met with the Franchise Owner and the Relative at the Franchise Owner's business. At the meeting, defendant Joyce instructed the Franchise Owner and the Relative to falsely represent to the Ethics Commission that the Franchise Owner

had agreed to provide defendant Joyce coffee in exchange for legal services.

N. On or about January 27, 2016, the Ethics Commission emailed the Relative a series of written questions related to defendant Joyce's claim that he provided legal services in exchange for coffee from the Franchise Owner.

O. Following the January 27, 2016 email, defendant Joyce met with the Relative in Canton.   During the meeting, defendant Joyce requested that the Relative respond to the written questions in the way defendant Joyce wanted the Relative to respond.   When the Relative suggested to defendant Joyce that the Relative respond to the Ethics Commission that the Relative did not remember the events in question, defendant Joyce stressed that he needed the Relative to affirmatively and falsely represent to the Ethics Commission that defendant Joyce received the coffee in exchange for legal services.

P. On or about February 4, 2016, the Relative emailed false written responses to the Ethics Commission's questions in accordance with defendant Joyce's instructions, and called defendant Joyce to inform him that the Relative had done so.

Q. On or about February 5, 2016, at defendant Joyce's direction, defendant Joyce's counsel emailed the Ethics Commission a materially false response to its inquiry, claiming that defendant Joyce had received coffee in exchange for legal services in late 2013.

**The Philadelphia Solar Company Extortion**

52.    There was an individual (the "PA Solar Representative"), who was a managing director of a Philadelphia, Pennsylvania solar company (the "PA Solar Company"), a company that did business in and affecting interstate commerce.   The PA Solar Representative met with defendant Joyce at his District Office in or about May 2012 to seek defendant Joyce's official assistance regarding local permitting and pending solar legislation that could potentially affect PA Solar Company's project in West Bridgewater.   West Bridgewater was a town within defendant Joyce's Senate District.

53.    Defendant Joyce attempted to use his official position as State Senator to obtain "legal" work for the Joyce Law Office from the PA Solar Company in West Bridgewater, as

follows:

A. From in or about 2011 to 2012, the PA Solar Representative was involved in developing a solar panel project in West Bridgewater. At least as early as April 2012, the PA Solar Representative had spoken with West Bridgewater town officials regarding construction permitting and potential town taxes to be applied to the PA Solar Company's project.

B. In or about April 2012, the PA Solar Company retained a lobbyist (the "Lobbyist") to act as its agent and assist it with state and local legislative matters, specifically, local permitting and town taxes to be levied on the PA Solar Company project in West Bridgewater and ongoing solar energy legislation in Massachusetts.

C. In late April 2012, the Lobbyist contacted defendant Joyce's Senate Office to arrange a meeting with defendant Joyce and the PA Solar Representative. During a telephone conversation at around that time, the Lobbyist told defendant Joyce that PA Solar Company representatives wanted to meet with defendant Joyce to discuss pending State solar legislation and its ongoing negotiations with West Bridgewater town officials regarding permitting and taxes. Defendant Joyce agreed and scheduled a meeting at his District Office.

D. On or about May 2, 2012, the PA Solar Representative, another representative from the PA Solar Company (together, the "PA Solar Representatives"), and the Lobbyist met with defendant Joyce at his District Office in Canton.

E. At the May 2, 2012 meeting, the PA Solar Representatives sought defendant Joyce's assistance as State Senator to expedite the local permitting process in West Bridgewater. In response to this, defendant Joyce stated, in sum and substance, "Yeah, I think I can get this permit for you. It would be through my law firm, and our fee would be $25,000 to get this permit for you."

F. Based on the May 2, 2012 meeting, the PA Solar Representatives and the Lobbyist concluded that in order to obtain defendant Joyce's official assistance as State Senator in recommending and advising West Bridgewater town officials to expedite and approve PA Solar Company's permits, the PA Solar Company needed to hire and pay the Joyce Law Office the "legal" fees that defendant Joyce quoted to them at the meeting. The PA Solar Representative declined to engage the Joyce Law Office for such a purpose.

36

### The Racketeering Violation

54.    From in or before 2010 and continuing through February 2016, in the District of Massachusetts and elsewhere, defendant

BRIAN AUGUSTINE JOYCE,

and others known and unknown to the Grand Jury, being persons employed by and associated with an enterprise, the Senate Office of Brian A. Joyce, did unlawfully and knowingly conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise, which enterprise was engaged in, and the activities of which affected, interstate commerce, through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code and as set forth below in paragraphs 55 to 70.

### The Pattern of Racketeering Activity

55.    The pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisted of the following acts:

(continued on following page)

37

**Racketeering Act #1**
**(The Energy Broker Kickback Scheme – Town of Randolph)**

56.    Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #1:

#1A.    On or about October 27, 2011, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and did cause to take and receive therefrom any such matter and thing, namely, a check from the Energy Broker Company (NY) that was mailed to defendant Joyce (MA) that included approximately $298.67 in Randolph energy commissions, for the purpose of executing and attempting to execute this scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

#1B.    From in or about early 2011 through 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Randolph Town Manager to perform an official act, and using his official position to advise the Randolph

38

Town Manager, intending that such advice would form the basis for an official act by the Randolph Town Manager, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Randolph, and the Town of Randolph's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Sections 1951(a) and 2.

#1C.   From in or about early 2011 through 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Randolph Town Manager to perform an official act, and using his official position to advise the Randolph Town Manager, intending that such advice would form the basis for an official act by the Randolph Town Manager, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Randolph, and the Town of Randolph's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Section 1951(a).

**Racketeering Act #2**
**(The Energy Broker Kickback Scheme – Town of Randolph-Renewal)**

57.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #2:

#2A.   On or about May 5, 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly transmitted and caused to be transmitted in interstate and foreign commerce by means of wire, radio, and television communication certain writings, signals, pictures, and sounds, namely, a wire payment from the Energy Broker Company (NY) to defendant Joyce (MA) that included approximately $2,757.62 in Randolph energy commissions, for the purpose of executing this scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

#2B.    From in or about April 2014 through February 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Randolph Town Manager to perform an official act, and using his official position to advise the Randolph Town Manager, intending that such advice would form the basis for an official act by the Randolph Town Manager, which official acts included the re-appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Randolph, and the

Town of Randolph's renewal of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Sections 1951(a) and 2.

   #2C. From in or about April 2014 through February 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Randolph Town Manager to perform an official act, and using his official position to advise the Randolph Town Manager, intending that such advice would form the basis for an official act by the Randolph Town Manager, which official acts included the re-appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Randolph, and the Town of Randolph's renewal of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Section 1951(a).

### Racketeering Act #3
### (The Energy Broker Kickback Scheme – Town of Easton)

58.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #3:

#3A.    On or about July 2, 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing to be sent and delivered by any private and commercial interstate carrier, and did cause to take and receive therefrom any such matter and thing, namely, a check from the Energy Broker Company (NY) that was mailed to defendant Joyce (MA) that included approximately $3,309.42 in Easton energy commissions, for the purpose of executing and attempting to execute this scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

#3B.    From in or about August 2013 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Easton Town Administrator to perform an official act, and using his official position to advise the Easton Town Administrator, intending that such advice would form the basis

42

for an official act by the Easton Town Administrator, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Easton, and the Town of Easton's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Sections 1951(a) and 2.

#3C. From in or about August 2013 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Easton Town Administrator to perform an official act, and using his official position to advise the Easton Town Administrator, intending that such advice would form the basis for an official act by the Easton Town Administrator, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Easton, and the Town of Easton's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Section 1951(a).

**Racketeering Act #4**
**(The Energy Broker Kickback Scheme – Town of East Bridgewater)**

59.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #4:

#4A.    On or about September 19, 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and did cause to take and receive therefrom any such matter and thing, namely, a check from the Energy Broker Company (NY) that was mailed to defendant Joyce (MA) that included approximately $4,473.93 in East Bridgewater energy commissions, for the purpose of executing and attempting to execute this scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

#4B.    From in or about February 2014 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the East Bridgewater Town Administrator to perform an official act, and using his

44

official position to advise the East Bridgewater Town Administrator, intending that such advice would form the basis for an official act by the East Bridgewater Town Administrator, which official acts included the appointment of the Energy Broker Company as the energy consultant for the Town of East Bridgewater, and the Town of East Bridgewater's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Sections 1951(a) and 2.

#4C.    From in or about February 2014 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the East Bridgewater Town Administrator to perform an official act, and using his official position to advise the East Bridgewater Town Administrator, intending that such advice would form the basis for an official act by the East Bridgewater Town Administrator, which official acts included the appointment of the Energy Broker Company as the energy consultant for the Town of East Bridgewater, and the Town of East Bridgewater's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Section 1951(a).

45

**Racketeering Act #5**
**(The Energy Broker Kickback Scheme – Town of Holbrook)**

60.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #5:

#5A.    On or about November 25, 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and did cause to take and receive therefrom any such matter and thing, namely, a check from the Energy Broker Company (NY) that was mailed to defendant Joyce (MA) that included approximately $1,531.53 in Holbrook energy commissions, for the purpose of executing and attempting to execute this scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

#5B.    From in or about August 2014 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Holbrook Town Administrator to perform an official act, and using his official

46

position to advise the Holbrook Town Administrator, intending that such advice would form the basis for an official act by the Holbrook Town Administrator, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Holbrook, and the Town of Holbrook's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Sections 1951(a) and 2.

#5C.    From in or about August 2014 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Holbrook Town Administrator to perform an official act, and using his official position to advise the Holbrook Town Administrator, intending that such advice would form the basis for an official act by the Holbrook Town Administrator, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Holbrook, and the Town of Holbrook's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Section 1951(a).

**Racketeering Act #6**
**(The Energy Broker Kickback Scheme – Town of Southbridge)**

61.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #6:

#6A.   On or about June 15, 2015, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and did cause to take and receive therefrom any such matter and thing, namely, a check from the Energy Broker Company (NY) that was mailed to defendant Joyce (MA) that included approximately $664.36 in Southbridge energy commissions, for the purpose of executing and attempting to execute this scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

#6B.   From in or about February through June 2015, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Southbridge Town Manager to perform an official act, and using his official position to advise the Southbridge Town Manager, intending that such advice would form the basis for an

48

official act by the Southbridge Town Manager, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Southbridge, and the Town of Southbridge's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Sections 1951(a) and 2.

#6C.    From in or about February through June 2015, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on the Southbridge Town Manager to perform an official act, and using his official position to advise the Southbridge Town Manager, intending that such advice would form the basis for an official act by the Southbridge Town Manager, which official acts included the appointment of the Energy Broker Company as the exclusive energy consultant for the Town of Southbridge, and the Town of Southbridge's approval of an energy contract that was brokered by the Energy Broker Company, as specific opportunities arose, in violation of Title 18, United States Code, Section 1951(a).

49

**Racketeering Act #7**
**(The Energy Broker Kickback Scheme – Easton College Solar Panel Project)**

62.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #7:

#7A.   On or about October 31, 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly transmitted and caused to be transmitted in interstate and foreign commerce by means of wire, radio, and television communication certain writings, signals, pictures, and sounds, namely, a wire payment from the Energy Broker Company (NY) to defendant Joyce (MA) that included approximately $89,157 in Easton College Solar Panel Project energy commissions, for the purpose of executing this scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

#7B.   From at least as early as in or about March 2012 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included filing Senate Bill number 1599 and an amendment to Senate Bill number 2200, using his official position to exert pressure on officials at the Massachusetts Department of Public Utilities (DPU) to perform an official act, and using his official position to advise DPU officials, intending that such advice

would form the basis for an official act by officials at the DPU, which official acts included the DPU taking no adverse action against the Easton College Solar Panel Project and the DPU declining to issue an adverse advisory ruling pertaining to the Easton College Solar Panel Project, as specific opportunities arose, in violation of Title 18, United States Code, Sections 1951(a) and 2.

#7C.   From at least as early as in or about March 2012 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of payments from the Energy Broker Company, with its consent, in exchange for defendant Joyce's official action, which included filing Senate Bill number 1599 and an amendment to Senate Bill number 2200, using his official position to exert pressure on officials at the Massachusetts Department of Public Utilities (DPU) to perform an official act, and using his official position to advise DPU officials, intending that such advice would form the basis for an official act by officials at the DPU, which official acts included the DPU taking no adverse action against the Easton College Solar Panel Project and the DPU declining to issue an adverse advisory ruling pertaining to the Easton College Solar Panel Project, as specific opportunities arose, in violation of Title 18, United States Code, Section 1951(a).

**Racketeering Acts #8-#10**
**(The Energy Broker Kickback Scheme – Money Laundering)**

63.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, that is, extortion contrary to 18 U.S.C. § 1951(a) and wire fraud contrary to 18 U.S.C. § 1343, conducted and attempted to conduct financial transactions which in fact involved the proceeds of such specified unlawful activity, as set forth below:

| RACKETEERING ACT # | Transaction (Energy Broker Company = EBC) | Approximate Dates |
|---|---|---|
| 8 | Electronic transmittal of funds including $2,757.62 in Randolph energy commissions from EBC, from Windswept's bank account to BAJPC's bank account | 5/5/2014 |
| 9 | Electronic transmittal of funds including $10,000 in Easton College Solar Panel Project energy commissions from EBC, from Windswept's bank account to BAJPC's bank account | 2/4/2015 |
| 10A | Electronic transmittal of $39,671 in Easton College Solar Panel Project energy commissions from EBC, from Windswept's bank account to BAJPC's bank account | 11/24/2014 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

64.     In or about November 2011, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, knowingly engaged in and attempted to engage in a monetary transaction affecting interstate commerce as set forth below in criminally derived property that was of a value of greater than $10,000, said property having been derived from specified unlawful activity, that is, the proceeds of extortion contrary to 18 U.S.C. § 1951(a) and wire fraud contrary to 18 U.S.C. § 1343, as follows:

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 10B | 11/24/2014 | Electronic transmittal of $39,671 in Easton College Solar Panel Project energy commissions from EBC, from Windswept's bank account to the BAJPC bank account |

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

The commission of either Racketeering Act #10A or Racketeering Act #10B constitutes the commission of Racketeering Act #10.

**Racketeering Act #11**
**(The Developer Kickback Scheme)**

65.     Defendant Brian Augustine Joyce committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #11:

#11A.   On or about the dates set forth below, in the District of Massachusetts and

elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise

a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its

citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator,

knowingly transmitted and caused to be transmitted in interstate and foreign commerce by means

of wire, radio, and television communications certain writings, signs, signals, pictures, and sounds,

for the purpose of executing this scheme and artifice to defraud, as set forth below:

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 11A-1 | 10/15/2012 | Defendant Joyce email to Developer telling Developer "We would make money even if four lots." (MA-Interstate computer server transmission) |
| 11A-2 | 4/15/2013 | Defendant Joyce email to Planning Board Chair telling Chair that MWC project "falls apart" if waiver not approved. (MA-Interstate computer server transmission) |
| 11A-3 | 4/18/2013 | Defendant Joyce email to Planning Board Chair asking Chair whether Board would "waive the 50' requirement." (MA-Interstate computer server transmission) |
| 11A-4 | 8/7/2013 | Defendant Joyce email to Developer telling Developer he "can set up meeting [with Chair] upon [his] return." (MA-Interstate computer server transmission) |

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 11A-5 | 9/27/2013 | Defendant Joyce email to Developer to coordinate concealment to reporter, "I was asked to help by women's club members and wouldn't take any fee."   (MA-Interstate computer server transmission) |
| 11A-6 | 10/9/2013 | Defendant Joyce email to Developer advising Developer to "[ask] for a continuance" of the Planning Board meeting. (MA-Interstate server transmission) |

All in violation of Title 18, United States Code, Sections 1343 and 1346, and 2.

#11B.   From in or about October 2012 through 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining money from the Developer, with the Developer's consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official, as specific opportunities arose, as set forth below:

| RACKETEERING ACT # | Official(s) Advised by Defendant Joyce | Official Act(s) to be Obtained for the Developer | Approximate Dates |
|---|---|---|---|
| 11B | Milton Planning Board – Chair; Milton Planning Board member X | Vote in favor of waiver for Milton Women's Club development; Planning Board approval of waiver | April 2013 to January 2014 |

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

#11C.   From in or about October 2012 through 2014, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain money from the Developer, with the Developer's consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official, as specific opportunities arose, as set forth below:

| RACKETEERING ACT # | Official(s) Advised by Defendant Joyce | Official Act(s) to be Obtained for the Developer | Approximate Dates |
|---|---|---|---|
| 11C | Milton Planning Board – Chair; Milton Planning Board member X | Vote in favor of waiver for Milton Women's Club development; Planning Board approval of waiver | April 2013 to January 2014 |

All in violation of Title 18, United States Code, Section 1951(a).

## Racketeering Act #12
### (The Developer Kickback Scheme – Money Laundering)

66.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #12:

On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of proceeds of specified unlawful activity, that is, extortion contrary to 18 U.S.C. § 1951(a) and wire fraud contrary to 18 U.S.C. § 1343, conducted and attempted to conduct financial transactions, which in fact involved the proceeds of such specified unlawful activity, as set forth below:

| RACKETEERING ACT # | Transaction | Approximate Dates |
|---|---|---|
| 12A | Defendant Joyce bank deposit of $20,500 check from Developer | 1/16/2014 |
| 12B | Developer bank deposit of $15,000 check from defendant Joyce | 1/27/2014 |
| 12C | Developer bank deposit of $5,000 check from defendant Joyce | 2/4/2014 |
| 12D | Developer bank deposit of $4,500 check from defendant Joyce | 2/18/2014 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

**Racketeering Act #13**
**(The Energy Insurance Brokerage Company Bribery Scheme)**

67.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #13:

#13A.   On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly transmitted and caused to be transmitted in interstate and foreign commerce by means of wire, radio, and television communications certain writings, signs, signals, pictures, and sounds, for the purpose of executing this scheme and artifice to defraud, as set forth below:

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 13A-1 | 12/30/2011 | Defendant Joyce email to EIB CEO agreeing to $5000 monthly payment. (MA-Interstate computer server transmission) |
| 13A-2 | 7/11/2012 | Defendant Joyce email to EIB CEO on Mass Development bond offering. (MA-Interstate computer server transmission) |
| 13A-3 | 7/13/2012 | EIB CEO relative email to defendant Joyce and EIB CEO with PACE insurance language to include in bill. (MA-Interstate computer server transmission) |
| 13A-4 | 7/11/2013 | Defendant Joyce email to EIB CEO stating that defendant Joyce "confirmed with the [Commissioner] that we have already satisfactorily addressed the issues raised in [Ins. Co. A's] letter to him."   (MA-Interstate computer server transmission) |

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 13A-5 | 7/26/2013 | Defendant Joyce email to EIB CEO describing meeting with Majority Leader and agreeing to push PACE bill. (MA-Interstate computer server transmission) |
| 13A-6 | 3/30/2015 | Defendant Joyce email to EIB CEO, "Suggest you not return call please," regarding reporter.   (MA-Interstate computer server transmission) |

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

#13B.    On or about the dates set forth below, in the District of Massachusetts, and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and did cause to take and receive any such matter and thing therefrom, for the purpose of executing and attempting to execute said scheme and artifice to defraud, as set forth below:

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF MAILING IN FURTHERANCE OF SCHEME |
|---|---|---|
| 13B-1 | 1/17/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-2 | 2/7/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-3 | 3/6/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-4 | 4/10/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-5 | 5/8/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-6 | 6/5/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-7 | 7/10/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-8 | 8/7/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-9 | 9/18/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-10 | 10/9/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-11 | 11/6/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-12 | 12/18/2012 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-13 | 1/8/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-14 | 2/5/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-15 | 3/19/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-16 | 4/9/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-17 | 5/7/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-18 | 7/9/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-19 | 7/16/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-20 | 8/13/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-21 | 9/10/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-22 | 10/8/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-23 | 11/5/2013 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-24 | 1/23/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-25 | 2/12/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-26 | 2/19/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-27 | 3/17/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-28 | 4/18/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-29 | 5/7/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-30 | 6/9/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-31 | 7/22/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-32 | 8/13/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-33 | 9/17/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-34 | 10/8/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-35 | 11/10/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-36 | 12/16/2014 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-37 | 1/14/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-38 | 2/11/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-39 | 4/14/2015 | $5,000 check from EIB Co. to Defendant Joyce |

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF MAILING IN FURTHERANCE OF SCHEME |
|---|---|---|
| 13B-40 | 5/13/2015 | $10,000 check from EIB Co. to Defendant Joyce |
| 13B-41 | 6/8/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-42 | 7/8/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-43 | 8/19/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-44 | 9/9/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-45 | 10/28/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-46 | 12/16/2015 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-47 | 1/21/2016 | $5,000 check from EIB Co. to Defendant Joyce |
| 13B-48 | 12/9/2014 | Defendant Joyce Fed-ex of checks to purchase 40,000 shares of EIB Common Stock |
| 13B-49 | 1/6/2016 | BAJPC $5,000 invoice mailed to Energy Insurance Brokerage Company |
| 13B-50 | 1/27/2016 | Defendant Joyce's letter sent to Ethics Commission, via his attorney, claiming that because his PACE bills did not contain an insurance provision, he "did not believe that his bill [S.B. 177; S.B. 1774], either directly or indirectly, could reasonably be viewed as benefitting [EIB Company]"; and claiming that Joyce's dealings with the DOI on June 3, 2013 were ministerial. |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

#13C.   From at least as early as in or about January 2010 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of money and property from the Energy Insurance Brokerage Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the

basis for an official act by the other official, as specific opportunities arose, as set forth below:

| RACKETEERING ACT # | APPX. DATES | MONEY/PROPERTY OBTAINED BY DEFENDANT JOYCE | OFFICIAL ACT(S) |
|---|---|---|---|
| 13C | 1/2010 to 1/2016 | - Legal fees paid to Joyce Law Office; - $2,796 in payments from EIB Co. to defendant Joyce's relative for summer internship at EIBC; - Monthly $5,000 payments from EIB Co. to BAJPC, totaling approximately $240,000; - 65,000 shares of EIB Co. Stock | DOI taking no adverse action against EIB Co. oil dealer insurance product; DOI taking no adverse action regarding Ins. Co. A complaint; DOI issuance of MGA certification letter<br><br>Sponsor, file, amend, and vote on PACE legislation |

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

#13D.   From at least as early as in or about January 2010 through January 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of money and property from the Energy Insurance Brokerage Company, with its consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official, as specific opportunities arose, as set forth below:

| RACKETEERING ACT # | APPX. DATES | MONEY/PROPERTY OBTAINED BY DEFENDANT JOYCE | OFFICIAL ACT(S) |
|---|---|---|---|
| 13D | 1/2010 to 1/2016 | - Legal fees paid to Joyce Law Office; <br> - $2,796 in payments from EIB Co. to defendant Joyce's relative for summer internship at EIBC; <br> - Monthly $5,000 payments from EIB Co. to BAJPC, totaling approximately $240,000; <br> - 65,000 shares of EIB Co. Stock | DOI taking no adverse action against EIB Co. oil dealer insurance product; DOI taking no adverse action regarding Ins. Co. A complaint; DOI issuance of MGA certification letter <br><br> Sponsor, file, amend, and vote on PACE legislation |

All in violation of Title 18, United States Code, Section 1951(a).

#13E. On or about the dates set forth below, in the District of Massachusetts, and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, a state employee, did directly and indirectly corruptly ask, demand, exact, solicit, seek, accept, receive, and agree to receive anything of value for himself in return for being influenced in his performance of any official act and any act within his official responsibility, as set forth below:

| RACKETEERING ACT # | APPX. DATES | THING OF VALUE | OFFICIAL ACT OR ACT WITHIN OFFICIAL RESPONSIBILITY |
|---|---|---|---|
| 13E-1 | 6/2011-8/2011 | $2,796 in payments from EIBC to defendant Joyce's relative for summer internship at EIBC | Sponsor, file, amend, and vote on PACE legislation |
| 13E-2 | 1/2012-1/2016 | Monthly $5,000 payments from EIBC to BAJPC totaling approximately $240,000 | Sponsor, file, amend, and vote on PACE legislation |

| RACKETEERING ACT # | APPX. DATES | THING OF VALUE | OFFICIAL ACT OR ACT WITHIN OFFICIAL RESPONSIBILITY |
|---|---|---|---|
| 13E-3 | 8/2014-12/2014 | 65,000 shares of EIB Stock | Sponsor, file, amend, and vote on PACE legislation |

All in violation of Massachusetts General Laws, Chapter 268A, Section 2(b)(1).

#13F.   On or about the dates set forth below, in the District of Massachusetts, and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, a state employee, did knowingly, otherwise as provided by law for the proper discharge of official duty, directly and indirectly, ask, demand, exact, solicit, seek, accept, receive, and agree to receive anything of substantial value for himself for and because of any official act and act within his official responsibility performed and to be performed by him, as set forth below:

| RACKETEERING ACT # | APPX. DATES | THING OF VALUE | OFFICIAL ACT OR ACT WITHIN OFFICIAL RESPONSIBILITY |
|---|---|---|---|
| 13F-1 | 6/2011-8/2011 | $2,796 in payments from EIBC to defendant Joyce's relative for summer internship at EIB Co. | Sponsor, file, amend, and vote on PACE legislation |
| 13F-2 | 1/2012-1/2016 | Monthly $5,000 payments from EIB Co. to BAJPC totaling approximately $240,000 | Sponsor, file, amend, and vote on PACE legislation |
| 13F-3 | 8/2014-12/2014 | 65,000 shares of EIB Co. Stock | Sponsor, file, amend, and vote on PACE legislation |

All in violation of Massachusetts General Laws, Chapter 268A, Section 3(b).

64

**Racketeering Act #14**
**(The EIB Common Stock – IRS Wire Fraud Scheme)**

68.    On or about the date set forth below, in the District of Massachusetts, and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Internal Revenue Service, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted in interstate commerce by means of wire, radio, television communications certain writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice to defraud, as set forth below:

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF WIRE IN FURTHERANCE OF SCHEME |
|---|---|---|
| 14 | 9/8/2015 | Electronically filed U.S. Individual Income Tax Return, Form 1040 for himself and his spouse for tax year 2014, falsely reporting early withdrawals from defendant Joyce's and his spouse's SEP-IRAs as qualifying tax-exempt rollovers in the amount of $427,629, and falsely reporting a SEP-IRA deductible contribution of $80,502, of which $76,125 consisted of defendant Joyce's purchase of EIB Common Stock with home equity line of credit funds |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**Racketeering Act #15**
**(The Coffee Franchise Bribery Scheme)**

69.     Defendant Brian Augustine Joyce committed the following acts, any one of which alone constitutes the commission of Racketeering Act #15:

#15A.   On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly (a) did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and did cause to take and receive therefrom for the purpose of executing and attempting to execute this scheme and artifice to defraud; and (b) transmitted and caused to be transmitted in interstate and foreign commerce by means of wire, radio, and television communications certain writings, signs, signals, pictures, and sounds, for the purpose of executing this scheme and artifice to defraud, as set forth below:

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|
| 15A-1 | 12/17/2010 | Defendant Joyce email to Franchise Owner thanking Franchise Owner for free coffee. (MA-Interstate computer server transmission) |
| 15A-2 | 12/16/2014 | Defendant Joyce email to Franchise Owner: "Can I get coffee to distribute at town halls again?" (MA-Interstate computer server transmission) |

| RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|
| 15A-3 | 12/17/2014 | Defendant Joyce email to Franchise Owner: "No decaf.   Usually I bring around 200 bags to various town halls, maybe fewer.   We like k cups at my office if possible." (MA-Interstate computer server transmission) |
| 15A-4 | 1/5/2015 | Defendant Joyce email to Franchise Owner: "I am attending the Massachusetts Municipal Association convention in a week. I would like to bring 500 bags of coffee, but I don't want to further burden you.   Would it be possible for me to obtain the coffee at cost?" (MA-Interstate computer server transmission) |
| 15A-5 | 2/1/2015 | Defendant Joyce phone call with the Franchise Owner's Relative directing the Relative to create backdated invoice for free 2014 coffee.   (AZ to MA interstate call) |
| 15A-6 | 4/3/2015 | Defendant Joyce mailed letter, via his attorney, to the Boston Globe referencing backdated invoice and check for 2014 coffee. |
| 15A-7 | 4/10/2015 | Defendant Joyce email to the Franchise Owner and Relative creating false paper trail of 2013 free coffee in exchange for legal services. (MA-Interstate computer server transmission) |
| 15A-8 | 2/5/2016 | Defendant Joyce mailed letter, via his attorney, to the Ethics Commission claiming that defendant Joyce received coffee in exchange for legal services in late 2013. |

All in violation of Title 18, United States Code, Sections 1341, 1343, 1346 and 2.

#15B.   From at least as early as in or about January 2010 through February 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by agreeing to obtain and obtaining a stream of money and property from the Franchise Owner, with the Franchise Owner's consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official, as specific opportunities arose, as set forth below:

| RACKETEERING ACT # | APPX. DATES | MONEY/PROPERTY OBTAINED BY DEFENDANT JOYCE | OFFICIAL ACT(S) |
|---|---|---|---|
| 15B | 2010-2016 | - $125,089 in payments from and on behalf of the Franchise Owner to defendant Joyce; <br> - Free Coffee Franchise coffee and other products provided to defendant Joyce on a regular basis; <br> - Solar energy brokerage commissions for solar panels on Franchise Owner property | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

#15C.   From at least as early as in or about January 2010 through February 2016, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and

commodity in interstate commerce by extortion under color of official right – that is, by agreeing

to obtain a stream of money and property from the Franchise Owner, with the Franchise Owner's

consent, in exchange for defendant Joyce's official action, which included using his official

position to exert pressure on other officials to perform an official act, and using his official position

to advise other officials, intending that such advice would form the basis for an official act by the

other official, as specific opportunities arose, as set forth below:

| RACKETEERING ACT # | APPX. DATES | MONEY/PROPERTY OBTAINED BY DEFENDANT JOYCE | OFFICIAL ACT(S) |
|---|---|---|---|
| 15C | 2010-2016 | - $125,089 in payments from and on behalf of the Franchise Owner to defendant Joyce; - Free Coffee Franchise coffee and other products provided to defendant Joyce on a regular basis; - Solar energy brokerage commissions for solar panels on Franchise Owner property | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |

All in violation of Title 18, United States Code, Section 1951(a).

#15D.   On or about the dates set forth below, in the District of Massachusetts, and

elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, a state employee, did directly and

indirectly corruptly ask, demand, exact, solicit, seek, accept, receive, and agree to receive anything

of value for himself in return for being influenced in his performance of any official act and any

act within his official responsibility, as set forth below:

| RACKETEERING ACT # | APPX. DATES | THING OF VALUE | OFFICIAL ACT OR ACT WITHIN OFFICIAL RESPONSIBILITY |
|---|---|---|---|
| 15D-1 | 2010-2013 | $125,089 in payments from and on behalf of the Franchise Owner to defendant Joyce | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |
| 15D-2 | 2010-2015 | Free Coffee Franchise coffee and other products provided to defendant Joyce on a regular basis | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |
| 15D-3 | 2014-2015 | Solar energy brokerage commissions for solar panels on Franchise Owner property | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |

All in violation of Massachusetts General Laws, Chapter 268A, Section 2(b)(1).

#15E.   On or about the dates set forth below, in the District of Massachusetts, and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, a state employee, did knowingly, otherwise as provided by law for the proper discharge of official duty, directly and indirectly, ask, demand, exact, solicit, seek, accept, receive, and agree to receive anything of substantial value for himself for and because of any official act and act within his official responsibility performed and to be performed by him, as set forth below:

| RACKETEERING ACT # | APPX. DATES | THING OF VALUE | OFFICIAL ACT OR ACT WITHIN OFFICIAL RESPONSIBILITY |
|---|---|---|---|
| 15E-1 | 2010-2013 | $125,089 in payments from and on behalf of the Franchise Owner to defendant Joyce | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |
| 15E-2 | 2010-2015 | Free Coffee Franchise coffee and other products provided to defendant Joyce on a regular basis | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |

| RACKETEERING ACT # | APPX. DATES | THING OF VALUE | OFFICIAL ACT OR ACT WITHIN OFFICIAL RESPONSIBILITY |
|---|---|---|---|
| 15E-3 | 2014-2015 | Solar energy brokerage commissions for solar panels on Franchise Owner property | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation |

All in violation of Massachusetts General Laws, Chapter 268A, Section 3(b).

**Racketeering Act #16**
**(The Philadelphia Solar Company Attempted Extortion)**

70.     From in or about April 2012 through May 2012, in the District of Massachusetts and elsewhere, the defendant, BRIAN AUGUSTINE JOYCE, did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt so to do, by extortion under color of official right – that is, by attempting to obtain money from the PA Solar Company, with the PA Solar Company's consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official, as specific opportunities arose, as set forth below:

| RACKETEERING ACT # | APPX. DATE | MONEY/PROPERTY ATTEMPTED TO BE OBTAINED BY DEFENDANT JOYCE | OFFICIAL ACT TO BE PERFORMED |
|---|---|---|---|
| 16 | May 2012 | At least approximately $25,000 in purported legal fees from the PA Solar Company to defendant Joyce | West Bridgewater officials' approval of permit applications by PA Solar Company to construct solar panel facility |

All in violation of Title 18, United States Code, Sections 1951(a) and 2.


All in violation Title 18, United States Code, Section 1962(c).

## COUNTS TWO THROUGH SEVENTY-NINE
### (Scheme to Defraud the Senate District and the Commonwealth of Massachusetts and its Citizens of Defendant Joyce's Honest Services - 18 U.S.C. §§ 1341, 1343, and 1346)

71.     Paragraphs 1 to 51 of Count One of this Indictment are incorporated herein.

72.     On or about the dates set forth below, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

having devised and intending to devise a scheme and artifice to defraud the Commonwealth of Massachusetts, the Senate District, and its citizens of the right to defendant Joyce's honest services as a Massachusetts State Senator, knowingly (a) did cause to be placed in post offices and authorized depositories for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, did cause to be deposited any matter and thing whatever to be sent and delivered by private and commercial interstate carrier, and did cause to take and receive said matter and things therefrom for the purpose of executing and attempting to execute such scheme and artifice to defraud; and (b) transmitted and caused to be transmitted in interstate and foreign commerce by means of wire, radio, and television communications certain writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice to defraud, as set forth below:

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---------|-----------------------------------|------------|------------------------------------------|
| 2 | 1A | 10/27/2011 | $298.97 in Randolph energy commissions mailed via check from the Energy Broker Company. (NY) to defendant Joyce (MA) |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|---|
| 3 | 2A | 5/5/2014 | $2,757.62 in Randolph energy commissions wired from the Energy Broker Company bank account (NY) to Windswept's bank account (MA). |
| 4 | 3A | 7/2/2014 | $3,309.42 in Easton energy commissions mailed via check from the Energy Broker Company (NY) to defendant Joyce (MA). |
| 5 | 4A | 9/19/2014 | $4,473.93 in East Bridgewater energy commissions mailed via check from the Energy Broker Company (NY) to defendant Joyce (MA). |
| 6 | 5A | 11/25/2014 | $1,531.53 in Holbrook energy commissions mailed via check from the Energy Broker Company (NY) to defendant Joyce (MA). |
| 7 | 6A | 6/15/2015 | $664.36 in Southbridge energy commissions mailed via check from the Energy Broker Company (NY) to defendant Joyce (MA). |
| 8 | 7A | 10/31/2014 | $89,157 in Easton College Solar Panel Project energy commissions wired from the Energy Broker Company bank account (NY) to Windswept's bank account (MA). |
| 9 | 11A-1 | 10/15/2012 | Defendant Joyce email to Developer telling Developer "We would make money even if four lots." (MA-Interstate computer server transmission) |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|---|
| 10 | 11A-2 | 4/15/2013 | Defendant Joyce email to Planning Board Chair telling Chair that MWC project "falls apart" if waiver not approved. (MA-Interstate computer server transmission) |
| 11 | 11A-3 | 4/18/2013 | Defendant Joyce email to Planning Board Chair asking Chair whether Board would "waive the 50' requirement." (MA-Interstate computer server transmission) |
| 12 | 11A-4 | 8/7/2013 | Defendant Joyce email to Developer telling Developer he "can set up meeting [with Chair] upon [his] return." (MA-Interstate computer server transmission) |
| 13 | 11A-5 | 9/27/2013 | Defendant Joyce email to Developer to coordinate concealment to reporter, "I was asked to help by women's club members and wouldn't take any fee."   (MA-Interstate computer server transmission) |
| 14 | 11A-6 | 10/9/2013 | Defendant Joyce email to Developer advising Developer to "[ask] for a continuance" of the Planning Board meeting. (MA-Interstate computer server transmission) |
| 15 | 13A-1 | 12/30/2011 | Defendant Joyce email to EIB CEO agreeing to $5000 monthly payment. (MA-Interstate computer server transmission) |
| 16 | 13A-2 | 7/11/2012 | Defendant Joyce email to EIB CEO on Mass Development bond offering. (MA-Interstate computer server transmission) |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|---|
| 17 | 13A-3 | 7/13/2012 | EIB CEO relative email to defendant Joyce and EIB CEO with PACE insurance language to include in bill. (MA-Interstate computer server transmission) |
| 18 | 13A-4 | 7/11/2013 | Defendant Joyce email to EIB CEO stating that defendant Joyce "confirmed with the [Commissioner] that we have already satisfactorily addressed the issues raised in [Ins. Co. A's] letter to him."   (MA-Interstate computer server transmission) |
| 19 | 13A-5 | 7/26/2013 | Defendant Joyce email to EIB CEO describing meeting with Majority Leader and agreeing to push PACE bill. (MA-Interstate computer server transmission) |
| 20 | 13A-6 | 3/30/2015 | Defendant Joyce email to EIB CEO, "Suggest you not return call please," regarding reporter. (MA-Interstate computer server transmission) |
| 21 | 13B-1 | 1/17/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 22 | 13B-2 | 2/7/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 23 | 13B-3 | 3/6/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 24 | 13B-4 | 4/10/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 25 | 13B-5 | 5/8/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 26 | 13B-6 | 6/5/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 27 | 13B-7 | 7/10/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 28 | 13B-8 | 8/7/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 29 | 13B-9 | 9/18/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|---|
| 30 | 13B-10 | 10/9/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 31 | 13B-11 | 11/6/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 32 | 13B-12 | 12/18/2012 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 33 | 13B-13 | 1/8/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 34 | 13B-14 | 2/5/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 35 | 13B-15 | 3/19/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 36 | 13B-16 | 4/9/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 37 | 13B-17 | 5/7/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 38 | 13B-18 | 7/9/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 39 | 13B-19 | 7/16/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 40 | 13B-20 | 8/13/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 41 | 13B-21 | 9/10/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 42 | 13B-22 | 10/8/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 43 | 13B-23 | 11/5/2013 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 44 | 13B-24 | 1/23/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 45 | 13B-25 | 2/12/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 46 | 13B-26 | 2/19/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 47 | 13B-27 | 3/17/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 48 | 13B-28 | 4/18/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 49 | 13B-29 | 5/7/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---------|-----------------------------------|-----------|------------------------------------------|
| 50 | 13B-30 | 6/9/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 51 | 13B-31 | 7/22/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 52 | 13B-32 | 8/13/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 53 | 13B-33 | 9/17/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 54 | 13B-34 | 10/8/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 55 | 13B-35 | 11/10/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 56 | 13B-36 | 12/16/2014 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 57 | 13B-37 | 1/14/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 58 | 13B-38 | 2/11/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 59 | 13B-39 | 4/14/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 60 | 13B-40 | 5/13/2015 | $10,000 check mailed from EIB Co. to Defendant Joyce |
| 61 | 13B-41 | 6/8/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 62 | 13B-42 | 7/8/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 63 | 13B-43 | 8/19/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 64 | 13B-44 | 9/9/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 65 | 13B-45 | 10/28/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 66 | 13B-46 | 12/16/2015 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 67 | 13B-47 | 1/21/2016 | $5,000 check mailed from EIB Co. to Defendant Joyce |
| 68 | 13B-48 | 12/9/2014 | Defendant Joyce Fed-ex of checks to EIB Company to purchase 40,000 shares of EIB Common Stock |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|---|
| 69 | 13B-49 | 1/6/2016 | BAJPC $5,000 invoice mailed to EIB Company |
| 70 | 13B-50 | 1/27/2016 | Defendant Joyce's letter mailed to Ethics Commission, via his attorney, claiming that because his PACE bills did not contain an insurance provision, he "did not believe that his bill [S.B. 177; S.B. 1774], either directly or indirectly, could reasonably be viewed as benefitting [EIB Company]"; and that Joyce's dealings with the DOI on 6/3/2013 were ministerial. |
| 71 | 14 | 9/8/2015 | Electronically filed U.S. Individual Income Tax Return, Form 1040 for himself and his spouse for tax year 2014, falsely reporting early withdrawals from defendant Joyce's and his spouse's SEP-IRAs as qualifying tax-exempt rollovers in the amount of $427,629, and falsely reporting a SEP-IRA deductible contribution of $80,502, of which $76,125 consisted of defendant Joyce's purchase of EIB Common Stock with home equity line of credit funds. |
| 72 | 15A-1 | 12/17/2010 | Defendant Joyce email to Franchise Owner thanking Franchise Owner for free coffee. (MA-Interstate computer server transmission) |
| 73 | 15A-2 | 12/16/2014 | Defendant Joyce email to Franchise Owner: "Can I get coffee to distribute at town halls again?" (MA-Interstate computer server transmission) |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---|---|---|---|
| 74 | 15A-3 | 12/17/2014 | Defendant Joyce email to Franchise Owner: "No decaf. Usually I bring around 200 bags to various town halls, maybe fewer.   We like k cups at my office if possible."   (MA-Interstate computer server transmission) |
| 75 | 15A-4 | 1/5/2015 | Defendant Joyce email to Franchise Owner: "I am attending the Massachusetts Municipal Association convention in a week.   I would like to bring 500 bags of coffee, but I don't want to further burden you.   Would it be possible for me to obtain the coffee at cost?" (MA-Interstate computer server transmission) |
| 76 | 15A-5 | 2/1/2015 | Defendant Joyce phone call with the Franchise Owner's Relative directing the Relative to create backdated invoice for free 2014 coffee.   (AZ to MA interstate call) |
| 77 | 15A-6 | 4/3/2015 | Defendant Joyce mailed letter, via his attorney, to the Boston Globe referencing backdated invoice and check for 2014 coffee. |
| 78 | 15A-7 | 4/10/2015 | Defendant Joyce email to the Franchise Owner and Relative creating false paper trail of 2013 free coffee in exchange for legal services. (MA-Interstate computer server transmission) |

| COUNT # | Racketeering Act # (for reference) | APPX. DATE | DESCRIPTION OF MAILING/WIRE TRANSMISSION |
|---------|-----------------------------------|------------|------------------------------------------|
| 79 | 15A-8 | 2/5/2016 | Defendant Joyce email, via his attorney, to the Ethics Commission claiming that defendant Joyce received coffee in exchange for legal services in late 2013.   (MA-Interstate computer server transmission) |

All in violation of Title 18, United States Code, Sections 1341, 1343, 1346 and 2.

## COUNT EIGHTY
### (Scheme to Defraud the Internal Revenue Service - 18 U.S.C. § 1343)

73.     Paragraphs 1 through 14 and 32 through 47 of Count One of this Indictment are incorporated herein.

74.     On or about the date set forth below, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

having devised and intending to devise a scheme and artifice to defraud the Internal Revenue Service, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted in interstate commerce by means of wire, radio, television communications certain writings, signs, signals, pictures and sounds, as set forth below:

| COUNT # | APPX. DATE | DESCRIPTION OF WIRING IN FURTHERANCE OF SCHEME |
|---------|------------|-----------------------------------------------|
| 80 | 9/8/2015 | U.S. Individual Income Tax Return, Form 1040 for himself and his spouse for tax year 2014, falsely reporting early withdrawals from defendant Joyce's and his spouse's SEP-IRAs as qualifying tax-exempt rollovers in the amount of $427,629, and falsely reporting a SEP-IRA deductible contribution of $80,502, of which $76,125 consisted of defendant Joyce's purchase of EIB Common Stock with home equity line of credit funds |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS EIGHTY-ONE to NINETY-ONE
**(Obstructing and Affecting Interstate and Foreign Commerce by Extortion Under Color of Official Right - 18 U.S.C. § 1951(a))**

75.     Paragraphs 1 to 53 of Count One of this Indictment are incorporated herein.

76.     On or about the dates set forth below, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

did obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce, and attempt and so to do, by extortion under color of official right – that is, by attempting to obtain and obtaining a stream of money and property from the individuals and entities set forth below, with their consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official, as specific opportunities arose, as set forth below:

| COUNT # | RACKETEERING ACT # | Official(s) to be Advised by Defendant Joyce | Official Act(s) to be Obtained | Appx. Dates |
|---------|--------------------|-----------------------------------------------|--------------------------------|-------------|
| 81 | 1B | Randolph – Town Manager | Appoint EBC exclusive energy consultant for Randolph; Town approval of EBC-brokered energy contract | Early 2011 to 2014 |
| 82 | 2B | Randolph – Town Manager | Reappoint EBC exclusive energy consultant for Randolph; Town approval of EBC-brokered energy contract | April 2014 to Feb. 2016 |
| 83 | 3B | Easton – Town Administrator | Appoint EBC exclusive energy consultant of record for Easton; Town approval of EBC-brokered energy contract | August 2013 to Jan. 2016 |

83

| COUNT # | RACKETEERING ACT # | Official(s) to be Advised by Defendant Joyce | Official Act(s) to be Obtained | Appx. Dates |
|---------|--------------------|---------------------------------------------|--------------------------------|-------------|
| 84 | 4B | East Bridgewater – Town Administrator | Appoint EBC energy consultant for East Bridgewater; Town approval of EBC-brokered energy contract | Feb. 2014 to Jan. 2016 |
| 85 | 5B | Holbrook – Town Administrator | Appoint EBC exclusive energy consultant of record for Holbrook; Town approval of EBC-brokered energy contract | August 2014 to Jan. 2016 |
| 86 | 6B | Southbridge – Town Manager | Appoint EBC exclusive natural gas energy consultant for Southbridge; Town approval of EBC-brokered energy contract | Feb. to June 2015 |
| 87 | 7B | MA State Senate; Massachusetts Department of Public Utilities officials | Amend Senate Bill 2200, file Senate Bill 1599 (incl. by defendant Joyce); Decline Issuance of Adverse Advisory Ruling (Easton College Solar Panel Project) | March 2012 to Jan. 2016 |
| 88 | 11B | Milton Planning Board – Chair; Milton Planning Board member X | Vote in favor of waiver for Milton Women's Club development; Planning Board approval of waiver | April 2013 to January 2014 |
| 89 | 13C | DOI officials | DOI taking no adverse action against EIB Co. oil dealer insurance product; DOI taking no adverse action regarding Ins. Co. A complaint; DOI issuance of MGA certification letter | January 2010 to January 2016 |
| | | MA State Senate | Sponsor, file, amend, and vote on PACE legislation (incl. by Defendant Joyce) | |
| 90 | 15B | MA State Senate | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation (incl. by Defendant Joyce) | January 2010 to February 2016 |

84

| COUNT # | RACKETEERING ACT # | Official(s) to be Advised by Defendant Joyce | Official Act(s) to be Obtained | Appx. Dates |
|---------|---------------------|---------------------------------------------|--------------------------------|-------------|
| 91 | 16 | West Bridgewater town officials | Approval of permit applications by PA Solar Company to construct solar panel facility | April to May 2012 |

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

## COUNTS NINETY-TWO to ONE HUNDRED ONE
### (Conspiracy to Obstruct and Affect Interstate and Foreign Commerce by Extortion Under Color of Official Right - 18 U.S.C. § 1951(a))

77.     Paragraphs 1 to 51 of Count One of this Indictment are incorporated herein.

78.     On or about the dates set forth below, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

did conspire to obstruct, delay, and affect interstate commerce and the movement of any article and commodity in interstate commerce by extortion under color of official right – that is, by agreeing to obtain a stream of money and property from the individuals and entities set forth below, with their consent, in exchange for defendant Joyce's official action, which included using his official position to exert pressure on other officials to perform an official act, and using his official position to advise other officials, intending that such advice would form the basis for an official act by the other official, as specific opportunities arose, as set forth below:

| COUNT # | RACKETEERING ACT # | Official(s) to be Advised by Defendant Joyce | Official Act(s) to be Obtained | Appx Dates |
|---|---|---|---|---|
| 92 | 1C | Randolph – Town Manager | Appoint EBC exclusive energy consultant for Randolph; Town approval of EBC-brokered energy contract | Early 2011 to 2014 |
| 93 | 2C | Randolph – Town Manager | Reappoint EBC exclusive energy consultant for Randolph; Town approval of EBC-brokered energy contract | April 2014 to Feb. 2016 |
| 94 | 3C | Easton – Town Administrator | Appoint EBC exclusive energy consultant of record for Easton; Town approval of EBC-brokered energy contract | August 2013 to Jan. 2016 |

86

| COUNT # | RACKETEERING ACT # | Official(s) to be Advised by Defendant Joyce | Official Act(s) to be Obtained | Appx Dates |
|---|---|---|---|---|
| 95 | 4C | East Bridgewater – Town Administrator | Appoint EBC energy consultant for East Bridgewater; Town approval of EBC-brokered energy contract | Feb. 2014 to Jan. 2016 |
| 96 | 5C | Holbrook – Town Administrator | Appoint EBC exclusive energy consultant of record for Holbrook; Town approval of EBC-brokered energy contract | August 2014 to Jan. 2016 |
| 97 | 6C | Southbridge – Town Manager | Appoint EBC exclusive natural gas energy consultant for Southbridge; Town approval of EBC-brokered energy contract | Feb. to June 2015 |
| 98 | 7C | MA State Senate; Massachusetts Department of Public Utilities officials | Amend Senate Bill 2200, file Senate Bill 1599 (incl. by defendant Joyce); Decline Issuance of Adverse Advisory Ruling (Easton College Solar Panel Project) | March 2012 to Jan. 2016 |
| 99 | 11C | Milton Planning Board – Chair; Milton Planning Board member X | Vote in favor of waiver for Milton Women's Club development; Planning Board approval of waiver | April 2013 to January 2014 |
| 100 | 13D | DOI officials | DOI taking no adverse action against EIB Co. oil dealer insurance product; DOI taking no adverse action regarding Ins. Co. A complaint; DOI issuance of MGA certification letter | January 2010 to January 2016 |
|  |  | MA State Senate | Sponsor, file, amend, and vote on PACE legislation (incl. by Defendant Joyce) |  |
| 101 | 15C | MA State Senate | Sponsor, file, amend, and vote on Franchise legislation and Tip Pooling legislation (incl. by Defendant Joyce) | January 2010 to February 2016 |

All in violation of Title 18, United States Code, Section 1951(a).

## COUNTS ONE HUNDRED TWO to ONE HUNDRED EIGHT
### (Money Laundering - 18 U.S.C. § 1956(a)(1)(B)(i))

79.    Paragraphs 1 to 31 of Count One of this Indictment are incorporated herein.

80.    On or about the dates set forth below, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, that is, extortion contrary to 18 U.S.C. § 1951(a) and wire fraud contrary to 18 U.S.C. § 1343, conducted and attempted to conduct financial transactions which in fact involved the proceeds of such specified unlawful activity, as set forth below:

| COUNT # | RACKETEERING ACT # | Transaction | Approximate Dates |
|---------|--------------------|-------------|-------------------|
| 102 | 8 | Electronic transmittal of funds including $2,757.62 in Randolph energy commissions from EBC, from Windswept's bank account to BAJPC's bank account | 5/5/2014 |
| 103 | 9 | Electronic transmittal of funds including $10,000 in Easton College Solar Panel Project energy commissions from EBC, from Windswept's bank account to BAJPC's bank account | 2/4/2015 |

| COUNT # | RACKETEERING ACT # | Transaction | Approximate Dates |
|---|---|---|---|
| 104 | 10A | Electronic transmittal of $39,671 in Easton College Solar Panel Project energy commissions from EBC, from Windswept's bank account to BAJPC's bank account | 11/24/2014 |
| 105 | 12A | Defendant Joyce bank deposit of $20,500 check from Developer | 1/16/2014 |
| 106 | 12B | Developer bank deposit of $15,000 check from defendant Joyce | 1/27/2014 |
| 107 | 12C | Developer bank deposit of $5,000 check from defendant Joyce | 2/4/2014 |
| 108 | 12D | Developer bank deposit of $4,500 check from defendant Joyce | 2/18/2014 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT ONE HUNDRED NINE
### (Money Laundering - 18 U.S.C. § 1957(a))

81.     Paragraphs 1 to 24 of Count One of this Indictment are incorporated herein.

82.     On or about the date set forth below, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

knowingly engaged in and attempted to engage in a monetary transaction as set forth below in criminally derived property that was of a value of greater than $10,000, said property having been derived from specified unlawful activity, that is, the extortion contrary to 18 U.S.C. § 1951(a) and wire fraud contrary to 18 U.S.C. § 1343, as follows:

| COUNT # | RACKETEERING ACT # | APPX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---------|--------------------|-----------|----------------------------------|
| 109 | 10B | 11/24/2014 | Electronic transmittal of $39,671 in Easton College Solar Panel Project energy commissions from EBC, from Windswept's bank account to the BAJPC bank account |

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNTS ONE HUNDRED TEN to ONE HUNDRED TWELVE
### (Fraud, Theft, Embezzlement, Misapplication Involving Federal Funds - 18 U.S.C. § 666(a)(1)(A))

83.     Paragraphs 1 to 22 of Count One of this Indictment are incorporated herein.

84.     The following towns were each local governments that received in excess of $10,000 in federal grants and other federal assistance, respectively, in each of the following calendar years, as set forth below:

| TOWN | CALENDAR YEAR RECEIVING in EXCESS of $10,000 in FEDERAL FUNDS |
|------|------|
| Town of Randolph | 2014, 2015 |
| Town of Easton | 2014, 2015 |
| Town of East Bridgewater | 2014, 2015 |

85.     Defendant Joyce, as the result of using his official position as State Senator to obtain Randolph, Easton, and East Bridgewater as energy clients for the Energy Broker Company, and contrary to state ethics laws that prohibited the use of public office for private gain, secretly obtained kickbacks in the form of energy broker commissions that were generated by payments made by each of the Towns of Randolph, Easton, and East Bridgewater, respectively, paid on a monthly basis.

86.     On or about the dates set forth below, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

being an agent of each of the aforementioned local governments, embezzled, stole, obtained by fraud and otherwise without authority knowingly converted to the use of a person other than the rightful owner and intentionally misapplied, property valued at $5,000 or more, which included

labor, services, funds, and other property, that was owned by, and was under the care, custody, and control of the specified local governments, each of which received in excess of $10,000 in federal program benefits that was funded by federal agencies, in any one-year period between in or about 2014 and in or about 2015, as follows:

| COUNT # | TOWN | PROPERTY OBTAINED (appx.) | DATES |
|---------|------|---------------------------|-------|
| 110 | Town of Randolph | $14,175 | 2014-2015 |
| 111 | Town of Easton | $14,759 | 2014-2015 |
| 112 | Town of East Bridgewater | $10,131 | 2014-2015 |

All in violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNT ONE HUNDRED THIRTEEN
### (Conspiracy to Impede and Impair the Functions of the IRS
### - 18 U.S.C. § 371)

87.    Paragraphs 1 to 14 and 32 to 47 of Count One of this Indictment are incorporated herein.

### The Conspiracy

88.    From at least in or about 2011 to at least in or about 2015, in the District of Massachusetts, and elsewhere, defendant

### BRIAN AUGUSTINE JOYCE,

and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree among themselves and with others to defraud the United States and the Internal Revenue Service ("IRS") of the United States Department of Treasury by impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS to ascertain, compute, assess, and collect income taxes.

### Object of Conspiracy

89.    It was an object of the conspiracy that defendant Joyce and others would subvert the function of the IRS to ascertain, compute, assess, and collect income taxes due and owing from defendant Joyce by fraudulently (i) inflating his spouse's self-employment income in order to maximize retirement plan contributions; and (ii) creating a fictitious rollover of retirement savings to conceal an early liquidation of retirement funds.

### Manner and Means of Conspiracy

90.    Among the manners and means employed by defendant Joyce and others to carry out the conspiracy and to effect its unlawful object were the following:

A.      Defendant Joyce and others fraudulently inflated defendant Joyce's spouse's yearly income by falsely allocating hundreds of thousands of dollars of BAJPC income, which included corrupt payments from EIB Company and the Energy Broker Company, to Joyce's spouse in order to maximize her retirement fund contributions.

B.      Defendant Joyce and others created documents to disguise a liquidation of over $395,000 in his and his spouse's SEP-IRA accounts – which defendant Joyce used to purchase approximately $417,250 in EIB Common Stock – as a tax-free rollover.

Overt Acts

91.     In furtherance of the conspiracy and to effect its unlawful objects, defendant Joyce and his co-conspirators committed and caused to be committed the following acts in the District of Massachusetts and elsewhere:

A.      During the relevant time period, defendant Joyce employed two bookkeepers ("BK1" and "BK2," respectively) and worked with an accountant (the "Accountant") to prepare and review the books and records of BAJPC and to assist in the preparation and filing of defendant Joyce's joint personal federal income tax.   From in or about 2011 to in or about 2015, defendant Joyce and the Accountant fraudulently allocated BAJPC income to defendant Joyce's spouse in order to inflate Joyce's spouse's personal income and falsely maximize SEP-IRA retirement contributions on a yearly basis, as follows:

| OVERT ACT | DATE | DESCRIPTION |
|---|---|---|
| A-1 | 10/4/2011 | BK1 email to the Accountant: "Brian would like you to evaluate his personal tax situation in the event he is able to make a 'catch up' payment prior to year end … He has received in Fees, including personal expenses paid on his behalf through 10/4/11: 280,600.00 … I discussed the cash situation with both you and BAJ, and he determined that paying SEP IRA was the priority …." |

94

| OVERT ACT | DATE | DESCRIPTION |
|---|---|---|
| A-2 | 1/17/2012 | BK1 email to the Accountant: "It was also Brian's intention to pay [defendant Joyce's spouse's]'s SEP IRA payment from this check, but I do not know how much that will be. I believe you [the Accountant] have to give me that number when you see what her income is." |
| A-3 | 4/5/2012 | Accountant email to defendant Joyce: "Brian, last year [tax year 2010] we didn't move any income from you to [defendant Joyce's spouse].   I'm not sure why that decision was finally made.   As of this writing I only moved $40K over to [defendant Joyce's spouse].   Any thoughts on what you want to do?" |
| A-4 | 4/5/2012 | Defendant Joyce email to the Accountant: "I would move as much as necessary so as to allow us to max out on her SEP IRA if I hit the lottery between now and October." |
| A-5 | 4/9/2012 | Defendant Joyce email to BK1: "how much are you comfortable saying that we will be able to pay toward [defendant Joyce's spouse's] 2011 SEP IRA by October 15, 2012?" |
| A-6 | 4/10/2012 | Accountant email to BK1 and defendant Joyce with the subject line "[defendant Joyce's spouse's] income": "I have prepared the extension with $60,000 going to [defendant Joyce's spouse's] Schedule c business.   Based on that her contribution to her SEP-IRA would be $17,298." |
| A-7 | 2/11/2013 | Defendant Joyce email to the Accountant and BK1: "[BK1] and [the Accountant], Can you please reach an agreement for the maximum SEP IRA payments for [defendant Joyce's spouse] and me for 2012?   Could you do the same for 2013?" |
| A-8 | 2/12/2013 | Accountant email to defendant Joyce: "We agreed on $20,000 for [defendant Joyce's spouse] for both years." |
| A-9 | 4/10/2014 | Accountant email to defendant Joyce: "I allocated $130K to [defendant Joyce's spouse].   That allows you to put another $31K in her SEP if you want[.]" |
| A-10 | 4/10/2014 | Defendant Joyce email to the Accountant: "If I need to make payments to the government, I'd rather reduce those payments by maxing the SEP IRA." |
| A-11 | 8/20/2014 | Defendant Joyce email to the Accountant: "52K for me (sic) SEP IRA limit this year.   How much can I allocate for [defendant Joyce's spouse]?   Everything look ok with my financials?" |

| OVERT ACT | DATE | DESCRIPTION |
|---|---|---|
| A-12 | 8/21/2014 | Accountant email to defendant Joyce: "Yes.   I know you want to maximize the SEP.   The amount I used was based on the income on the projection (20%), for both you and [defendant Joyce's spouse]." |

B.   As described in paragraph numbers 38 to 47 of Count One, above, defendant Joyce used a home equity line of credit loan and the liquidation of defendant Joyce's and his spouse's SEP-IRA retirement savings to fund the purchase of approximately $471,250 in EIB Common Stock from August 30, 2014 to December 8, 2014.   In order to avoid early withdrawal taxes and penalties, defendant Joyce, and his co-conspirators, concealed his purchase of EIB Common Stock as a fictitious rollover, as follows:

| OVERT ACT | APPX. DATE(S) | DESCRIPTION |
|---|---|---|
| B-1 | 9/5/2014 | Defendant Joyce sends HELOC check to EIB Company for $50,750; Memo on Check: "7,000 Shares SEP IRA" |
| B-2 | 9/5/2014 | Defendant Joyce sends HELOC check to EIB Company for $25,375; Memo on Check: "3,500 Shares SEP IRA" |
| B-3 | 10/4/2014 | Defendant Joyce causes liquidation of $105,125 from spouse's IRA; issues personal check to EIB Company for $105,125; Memo on Check: "14,500 Shares [Spouse] SEP IRA" |
| B-4 | 12/10/2014 | Defendant Joyce causes liquidation of $72,500 from spouse's IRA; issues personal check to EIB Company for $72,500; Memo on Check: "10,000 Shares [Spouse] SEP IRA" |
| B-5 | 12/10/2014 | Defendant Joyce causes liquidation of $250,000 from his IRA; issues personal check to EIB Company for $217,500; Memo on Check: "30,000 Shares SEP IRA" |
| B-6 | 3/13/2015 | Accountant email to defendant Joyce regarding defendant Joyce's withdrawal of $250,000 from his IRA: "No withholdings and to be treated as an early withdrawal.   This will have a significant effect on your return." |

| OVERT ACT | APPX. DATE(S) | DESCRIPTION |
|---|---|---|
| B-7 | 3/13/2015 | Defendant Joyce email to the Accountant, responding: "All IRA withdrawals were either reimbursed within 60 days, or invested in [EIB Company].   No taxes." |

C.    On or about the following dates, defendant Joyce, with the Accountant's assistance, signed, filed, and caused to be filed with the IRS United States Individual Income Tax Returns for tax years 2011 through 2014 that were false, in that those tax returns fraudulently allocated BAJPC income to defendant Joyce's spouse's income to maximize retirement contributions and falsely claimed a rollover of IRA funds to conceal an IRA liquidation that was made to purchase EIB Common Stock, as follows:

| OVERT ACT | TAX RETURN FILING DATE | DESCRIPTION OF FILING |
|---|---|---|
| C-1 | 9/26/2012 | Defendant Joyce's U.S. Personal Income Tax Return Form 1040 allocating additional $60,000 income to defendant Joyce spouse for Tax Year 2011 |
| C-2 | 4/10/2013 | Defendant Joyce's U.S. Personal Income Tax Return Form 1040 allocating additional $80,000 income to defendant Joyce's spouse for Tax Year 2012 |
| C-3 | 4/14/2014 | Defendant Joyce's U.S. Personal Income Tax Return Form 1040 allocating additional $130,000 income to defendant Joyce's spouse for Tax Year 2013 |
| C-4 | 9/8/2015 | Defendant Joyce's U.S. Personal Income Tax Return Form 1040 allocating additional $120,000 income to defendant Joyce's spouse for Tax Year 2014; and claiming a tax-free IRA rollover of $427,629 for Tax Year 2014. |

In violation of Title 18, United States Code, Section 371.

## RACKETEERING FORFEITURE ALLEGATION
### (18 U.S.C. § 1963)

1.  Upon conviction of the offense in violation of Title 18, United States Code, Section 1962, set forth in Count One of this Indictment,

### BRIAN AUGUSTINE JOYCE,

the defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963:

    a.    all interests the defendant has acquired or maintained in violation of Title 18, United States Code, Section 1962, wherever located, and in whatever names held;

    b.    all interests in, securities of, claims against, or properties or contractual rights of any kind affording a source of influence over, any enterprise which the defendant has established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

    c.    all property constituting, and derived from, any proceeds which the defendants obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

2.  If any of the above property, including but not limited to the property described in Paragraph 42 of the Indictment, as being forfeitable pursuant to Title 18, United States Code, Section 1963, as a result of any act and omission of the defendant –

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred to, sold to, or deposited with a third party;

c.      has been placed beyond the jurisdiction of this Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m),

to seek forfeiture of any other property of the defendant up to the value of the property described

in this section's Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 1963.

## FRAUD FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

1.      Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 666, 1341, 1343, 1951(a), set forth in Counts Two through One Hundred One, and One Hundred Ten through One Hundred Twelve of this Indictment,

### BRIAN AUGUSTINE JOYCE,

defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses.

2.      If any of the property described in this section's Paragraph 1, above, as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant --

   a.      cannot be located upon the exercise of due diligence;

   b.      has been transferred to, sold to, or deposited with a third party;

   c.      has been placed beyond the jurisdiction of this Court;

   d.      has been substantially diminished in value; or

   e.      has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in this section's Paragraph 1 above.

   All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

1.     Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Sections 1956, 1957, set forth in Counts One Hundred Two through Count One

Hundred Nine of this Indictment,

### BRIAN AUGUSTINE JOYCE

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code,

Section 982(a)(1), any property, real or personal, involved in such offenses, and any property

traceable to such property.

2.     If any of the property described in this section's Paragraph 1, above, as being

forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or

omission of the defendant --

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided
without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property described in this section's Paragraph 1

above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

MAVKUS Bthzell
FOREPERSON OF THE GRAND JURY

DUSTIN CHAO
WILLIAM F. BLOOMER
ASSISTANT U.S. ATTORNEYS

U.S. DISTRICT OF MASSACHUSETTS; December 7, 2017.
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

@ 1:10 PM
12/7/17

102